ED JACKAMONIS, Speaker State Assembly
You ask whether 1981 Assembly Bill 262, which would amend the grounds for emergency detention and involuntary commitment under the Mental Health Act (hereinafter "the Act"), would be constitutional if enacted. The answer is no. *Page 35 
The Act provides that emergency detention or involuntary commitment may not occur unless the person sought to be detained is dangerous to himself or herself or to others. Secs. 51.15
(1)(a), 51.20 (1)(a)2., Stats. Dangerousness is defined as a substantial probability of serious physical harm, as evidenced by a recent act or omission. As analyzed by the Legislative Reference Bureau, 1981 AB 262 modifies the dangerousness standard as follows:
 1. The bill specifies that "recent act or omission" means acts or omissions occurring up to 180 days before the person is taken into custody under emergency detention or before a petition for involuntary commitment of the person is filed.
 2. The bill removes the requirement that a "substantial probability" of imminent death or serious physical harm exist, requiring instead that a "reasonable possibility" exist.
 3. The bill removes the requirement that "serious" physical harm exist, requiring only a showing of physical harm.
1981 AB 262 seeks to amend secs. 51.15 (1)(a)4. and 51.20
(1)(a)2.d., (1m), Stats., which are restricted to those instances where individuals are dangerous to themselves.
The "substantial probability," "serious harm" and "recent act or omission" requirements were incorporated into the Act as a result of a three-judge court's decision in Lessard v. Schmidt,349 F. Supp. 1078 (E.D. Wis. 1972), vacated and remanded for amore specific order, 414 U.S. 473, order on remand, 379 F. Supp. 1376
(E.D. Wis. 1974); vacated and remanded on other grounds,421 U.S. 957 (1975); and order reinstated on remand, 413 F. Supp. 1318
(1976). Lessard is the leading case in setting forth the constitutional due process requirements for civil commitments, having been followed by a number of other courts throughout the country. Suzuki v. Yuen, 617 F.2d 173 (9th Cir. 1980); Kendall v.True, 391 F. Supp. 413 (W.D. Ky. 1975); Lynch v. Baxley,386 F. Supp. 378 (M.D. Ala. N.D. 1974); and Bell v. Wayne County GeneralHospital at Eloise, 384 F. Supp. 1085 (E.D. Mich. S.D. 1974).
The court in Lessard held that due process requires that the state must demonstrate a compelling interest before it may interfere with *Page 36 
an individual's substantial interest in remaining at liberty.349 F. Supp. at 1091. The court therefore required application of:
 [A] balancing test in which the state must bear the burden of proving that there is an extreme likelihood that if the person is not confined he will do immediate harm to himself or others. Although attempts to predict future conduct are always difficult, and confinement based upon such a prediction must always be viewed with suspicion, we believe civil confinement can be justified in some cases if the proper burden of proof is satisfied and dangerousness is based upon a finding of a recent overt act, attempt or threat to do substantial harm to oneself or another.
Lessard, 349 F. Supp. at 1093. It is my opinion that adoption of the proposed amendments to the Act would leave the Act far short of meeting the requirements of the balancing test set forth inLessard. Having merely to establish a "reasonable possibility" of physical harm does not meet the Lessard burden of proving the "extreme likelihood" that a person is dangerous to himself or herself. Similarly, deletion of the requirement that physical harm be "serious" runs counter to the Lessard requirement of "substantial harm." Finally, the definition of "recent act or omission" as any act or omission occurring within 180 days prior to initiation of detention or commitment would appear to conflict with the requirement of "immediate" harm. It is difficult to comprehend how an act occurring six months in the past could reasonably support a finding of immediate harm. I therefore conclude that 1981 AB 262 fails to meet the constitutional due process requirements for emergency detention and civil commitment enunciated in Lessard.
It might be argued that Lessard's precedential value is diminished because of its unusual procedural history. The three-judge court's decision was twice appealed to the United States Supreme Court. On the first appeal, the Supreme Court vacated the decision and returned the case to the lower court for clarification of its decision. The three-judge court clarified the decision, and on the second appeal, the Supreme Court again vacated the decision and returned the matter to the lower court for consideration of the questions of whether the case should have been decided at all. The three-judge court concluded that the case had been properly decided, and the court's earlier decision was reinstated. However, in the meantime, *Page 37 
the Legislature incorporated the Lessard requirements into the Act. The litigation thus ended at this point, and the Supreme Court never reached the merits of the Lessard decision.
The United States Supreme Court has never expressly stated the constitutional limits of civil commitment. It has, however, clearly recognized that civil commitment involves a "massive curtailment of liberty." Vitek v. Jones, 445 U.S. 480 (1980) andHumphrey v. Cady, 405 U.S. 504, 509 (1972). The Court has held that such a significant deprivation of liberty requires due process protection. Addington v. Texas, 441 U.S. 418, 425 (1979) and Jackson v. Indiana, 406 U.S. 715 (1972). And in O'Connor v.Donaldson, 422 U.S. 563, 575 (1975), the Court's holding that "`mental illness' alone cannot justify a State's locking a person up against his will," indicates that civil commitment is justified only when a state's interest in confinement outweighs the individual's interest in remaining at liberty. Such "interest balancing" suggests application of a balancing test similar to that utilized in Lessard. See 44 U. Chi. L. Rev. 562, 591-92 (1977). Thus, even absent any consideration of the Lessard
decision, it is my opinion that recent United States Supreme Court decisions strongly suggest that the proposed amendments to the Act contained in 1981 AB 262 could not survive a due process challenge.
Of course, all legislative acts are entitled to a presumption of constitutionality. State ex rel. Hammermill Paper Co. v. LaPlante, 58 Wis.2d 32, 46, 205 N.W.2d 784 (1973). Courts are obligated, "if possible, to so construe the statute as to find it in harmony with accepted constitutional principles." State exrel. Harvey v. Morgan, 30 Wis.2d 1, 13, 139 N.W.2d 585 (1966). But it is my opinion that a court's only method of preserving the constitutionality of 1981 AB 262 would be to read back into the Act the requirements that the Bill attempts to delete, thus rendering the amendments of no practical effect. It is unlikely, however, that a court would engage in such a futile exercise, and the probable result would be a declaration of unconstitutionality.
In conclusion, it is my opinion that amendment of the Act as proposed in 1981 AB 262 would be unconstitutional.
BCL:DDS:cm *Page 38