IN RE the COMMITMENT OF Frank CURIEL:

STATE of Wisconsin, Petitioner-Respondent,

v.

Frank CURIEL, Respondent-Appellant-Petitioner.

Supreme Court

*No. 97–1337. Oral argument May 4, 1999.—Decided July 2, 1999.*

(Also reported in 597 N.W.2d 697.)

389

[4] See Callaghan's Wisconsin Digest, same topic and section number.

For the respondent-appellant-petitioner there were briefs by *Jack C. Hoag* and *Sedor & Hoag*, Janesville and oral argument by *Jack C. Hoag*.

For the petitioner-respondent the cause was argued by *Sally L. Wellman*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. DONALD W. STEINMETZ, J. The petitioner, Frank Curiel, seeks review of an unpublished decision of the court of appeals[1] which upheld a verdict and commitment order of the Circuit Court for Milwaukee County, the Honorable Jeffrey A. Kremers. The circuit court found Curiel to be a sexually violent person under Wis. Stat. ch. 980 (1995–96)[2] and ordered his commitment.

¶ 2. We are presented with the following issues for our review:

---

[1] *State v. Curiel*, No. 97–1337, unpublished slip op. (Ct. App. July 21, 1998).

[2] All future statutory references are to the 1995–96 volume unless otherwise indicated.

¶ 3. 1) What is the proper interpretation of "substantially probable" as the term is used in Wis. Stat. ch. 980? We hold that "substantially probable," construed according to its common and appropriate usage, means "much more likely than not."

¶ 4. 2) Is a person's right to equal protection violated where a finding of dangerousness under Wis. Stat. ch. 980 does not require that the risk that the person will engage in sexual violence is to a degree of "extreme likelihood?" We hold that the standards for dangerousness under ch. 980 do not violate equal protection.

¶ 5. 3) Is the term "substantially probable" as used to determine whether a defendant is dangerous under Wis. Stat. ch. 980 unconstitutionally vague? We hold that the term "substantially probable," when construed according to its common and appropriate usage to mean "much more likely than not," is not unconstitutionally vague.

¶ 6. 4) Whether the proper standard of review to apply to a challenge to the sufficiency of the evidence in a Wis. Stat. ch. 980 proceeding is that used in criminal or civil cases. We hold that appellate court review of challenges to the sufficiency of the evidence in ch. 980 proceedings should be that standard applied in criminal cases.

¶ 7. 5) Is the verdict of the court supported by the evidence? We hold that the evidence adduced at trial was sufficient to support the commitment of the defendant under Wis. Stat. ch. 980.

I

¶ 8. In 1989, Frank Curiel (Curiel) was convicted of second degree sexual assault in violation of Wis. Stat. § 940.225(2)(e) (1985–86) and was sentenced to

prison for a term of six years. Prior to his scheduled release, the State petitioned for his commitment under ch. 980, which governs the civil commitment of sexually violent persons. The State satisfied the circuit court that Curiel was eligible for commitment and, following a number of adjournments, a trial to the court was held on December 2, 1996.[3]

¶ 9. The only disputed issue at trial was whether it was substantially probable that Curiel would engage in future acts of sexual violence.[4] Both witnesses for the State testified that, to a reasonable degree of psychological certainty, it was substantially probable that Curiel would engage in future acts of sexual violence. The one witness for the defense testified that it was not. None of the witnesses, however, used the same working definition of "substantially probable" in reaching their conclusions.

¶ 10. The State called Dr. Frederick Waddell (Waddell), a psychologist with the Kettle Moraine Correctional Institution, as its first witness. Waddell testified that he had concluded to a reasonable degree of psychological certainty that Curiel suffered from the

---

[3] Curiel waived his statutory right to a jury trial.

[4] Under Wis. Stat. § 980.05(3)(a), the State has the burden of proving beyond a reasonable doubt all of the allegations in the petition for commitment. The petition "must allege that the person: (1) was convicted, found delinquent, or found not guilty by reason of mental disease or defect of a sexually violent offense; (2) is within 90 days of release from a sentence, commitment, or secured correctional facility arising from a sexually violent offense; (3) has a mental disorder; and (4) is dangerous because that mental disorder creates a substantial probability that he or she will engage in acts of sexual violence." *State v. Post*, 197 Wis. 2d 279, 297–98, 541 N.W.2d 115 (1995) (footnotes omitted); Wis. Stat. § 980.02(2).

mental disorder known as pedophilia and that it was substantially probable that because of the disorder Curiel would engage in future acts of sexual violence. He explained that he reached these conclusions based upon an approximately one hour interview with Curiel and an examination of Curiel's social services and clinical services files, which included a copy of Curiel's presentence investigation report. He based his conclusion that it was substantially probable that Curiel would reoffend sexually on the following five factors: 1) Curiel was diagnosed a pedophile, 2) had episodes of exhibitionism, 3) was not treated for either pedophilia or exhibitionism, 4) had serious problems with drugs and alcohol, and 5) his known sexual offenses demonstrated a pattern of increasing severity. Waddell also testified that his personal working definition of "substantially probable" was "more likely than not" and that he did not think it was "substantially probable" that Curiel would engage in future acts of sexual violence if that term were defined as "much more likely than not." Following his testimony, his written evaluation of Curiel was admitted into evidence.

¶ 11. As its second witness, the State called Dr. Ronald Sindberg (Sindberg), a psychologist employed by the Mendota Mental Health Institute. As did Waddell, Sindberg testified to a reasonable degree of psychological certainty that Curiel had a mental disorder known as pedophilia and that it was substantially probable that Curiel would engage in future acts of sexual violence. He based his conclusion upon his examination of Curiel's social services and clinical files; Curiel, on the advice of his attorney, refused to speak with Sindberg. Sindberg's opinion was developed by considering whether Curiel met the criteria for a number of risk factors used to predict whether a person

397

was likely to reoffend sexually, and then whether treatment that Curiel had received would tend to diminish the weight of the risk factors.

¶ 12. Specifically, Sindberg testified that Curiel met the criteria for 17 of 31 risk factors the Mendota Mental Health Institute had identified as predictors that a person would commit future acts of sexual violence. He further testified that of those 31 risk factors, 14 were regarded in scientific literature as highly reliable predictors of future acts of sexual violence. Of those 14 most reliable risk factors, Sindberg found that Curiel met the criteria for the following ten: 1) pretreatment deviate sexual arousal, 2) non-sexual criminality, 3) denial or minimization of offenses, 4) extra familial victims, 5) never very married, 6) multiple paraphilias, 7) attitudes which legitimize crimes, 8) hands on and hands off offenses, 9) history of sexual abuse as a child, and 10) history of substance abuse. Sindberg testified that together, these risk factors made it substantially probable that Curiel would reoffend. He stated that he did not believe that the non-sex offender treatment Curiel had received offset to any significant degree the weight of these risk factors. Finally, he explained that his opinion remained the same whether "substantially probable" was defined as "more likely than not" or "much more likely than not." Sindberg's written evaluation was also admitted into evidence.

¶ 13. At the close of the State's case, defense counsel moved for a directed verdict, arguing that the evidence was insufficient to establish that there was a substantial probability that Curiel would reoffend. Defense counsel argued first that Sindberg's testimony could not support a finding that the risk that Curiel would reoffend sexually was substantially probable

because Sindberg's method of evaluation was fraught with error: he did not personally interview Curiel and in the view of the defense, his use of objectively-based risk factors to reach his conclusion was a questionable method of evaluation. Then, with the premise that the term "substantially probable" must mean a degree of likelihood no less probable than "much more likely than not," counsel argued that Waddell's testimony was insufficient to support a finding of "dangerousness."

¶ 14. The circuit court denied the motion. It found that regardless of the fact that the witnesses used varied working definitions of the term, both had testified that it was substantially probable that Curiel would reoffend. Second, the court stated that even if "substantially probable" were defined as "much more likely than not," that standard was satisfied by Sindberg's testimony alone.

¶ 15. The defense called a single witness in rebuttal, Dr. Charles Lodl (Lodl), a psychologist in private practice. Lodl testified that he had met with Curiel for many hours and that he performed three psychological tests, including two that were directed toward assessing Curiel's sexual interests and knowledge. Lodl further testified that based on this background, and to a reasonable degree of psychological certainty, it was not substantially probable that Curiel would engage in future acts of sexual violence. He had concluded that Curiel was a moderate risk for reoffending sexually. He also testified that he internalized the probability of future acts of sexual violence as a five-point scale that he described as "low risk," "low to moderate risk," "moderate risk," "moderate to high risk," and "high risk." He believed only "moderate to

high risk" and "high risk" equated with the term "substantially probable."

¶ 16. Lodl also cast doubt on the analysis Sindberg used in developing his expert opinion. Of the 14 factors which Sindberg had claimed most accurately predicted whether a person would engage in a future act of sexual violence, Lodl admitted that scientific literature had once given its support; however, some of the factors more recently had been called into doubt as less predicative of such behavior than once thought. He further testified that one's consideration of all the risk factors should not be conducted in a "check-mark" manner but should include some clinical judgment that was based in part on an interview with the subject.

¶ 17. Considering the evidence before it, the circuit court believed that the State had carried its burden to prove all the allegations in the petition for commitment beyond a reasonable doubt. As relevant to its decision on the disputed question of whether it was substantially probable that Curiel would ·engage in future acts of sexual violence, the circuit court expressed its reasoning as follows:

> Now what I have then is someone who, according to everybody, including Dr. Lodl, is at a high risk of reoffending criminally, is at a moderate risk of reoffending sexually, if you look at Dr. Lodl's conclusions, at a much more likely than not risk if you listen to Dr. Sindberg and more likely than not if you listen to Dr. Waddell. Under any standard that I think—if—if the standard that's in chapter 980 is constitutional, then this evidence in my mind establishes beyond a reasonable doubt that Mr. Curiel as he presently carries himself and views himself and deals with his psychological problems is dangerous as that term is defined in chapter 980,

and I am finding that the State has proved this case beyond a reasonable doubt, and I find that Mr. Curiel is a sexually violent person as alleged in the petition.

The circuit court then committed Curiel to the custody of the Department of Health and Social Services for control.

¶ 18. The court of appeals affirmed the circuit court's verdict and commitment order. It concluded that the term "substantially probable" required no further definition as the legislature intended the phrase to mean "substantially probable." *State v. Curiel*, No. 97–1337, unpublished slip op. at 8 (Ct. App. July 21, 1998). It also concluded that Waddell's and Sindberg's testimony served as sufficient evidence to support the circuit court's findings that Curiel was dangerous. *Id.* at 8–9. As one point of error, Curiel had also appealed the circuit court's finding that Lodl had testified that Curiel was "at a high risk of reoffending criminally." The court of appeals believed that the circuit court's statement was inconsequential to its decision and was nonetheless immediately followed by accurate facts upon which its decision was based. *Id.* at 9.

¶ 19. We affirm the decision of the court of appeals but disagree that the term "substantially probable" needs no further definition. We conclude that when the legislature used "substantially probable," it intended that the standard be read according to its common and appropriate usage: "much more likely than not."

II

¶ 20. On appeal to this court, in addition to the issues presented in the court of appeals, Curiel for the first time challenges the constitutionality of ch. 980.

The constitutional challenges Curiel makes here are also presented by the petitioner Peter Kienitz (Kienitz) in the companion case *State v. Kienitz*, 227 Wis. 2d 423, 597 N.W.2d 712 (1999). Those statutory and constitutional challenges made by both Curiel and Kienitz are addressed here.

¶ 21. Lying at the heart of each of Curiel's arguments on appeal is the meaning of "substantially probable" as that term is used in ch. 980. First, Curiel argues that "substantially probable" means "extreme likelihood" and that the circuit court erred in failing to so define the term. Second, Curiel argues that the failure to define "substantially probable" as meaning "extreme likelihood" violates his right to equal protection. Third, Curiel argues that the court of appeals' failure to further define "substantially probable" leaves ch. 980 unconstitutionally vague. And finally, Curiel asserts that the evidence adduced at his commitment trial was insufficient to support a finding that to the degree required by statute, he would engage in future acts of sexual violence.

## Statutory Interpretation

¶ 22. Our analysis appropriately begins with determining the meaning of "substantially probable" as the term is used in ch. 980. Under Wis. Stat. § 980.01(7), a person "is dangerous because he or she suffers from a mental disorder that makes it *substantially probable* that the person will engage in acts of sexual violence." *Id.* (emphasis supplied). Pursuant to Wis. Stat. § 980.02(2)(c), the State must prove beyond a reasonable doubt that "[t]he person is dangerous to others because the person's mental disorder creates a *substantial probability* that he or she will engage in acts of sexual violence." *Id.* (emphasis supplied). We

explicitly note this difference in the phrasing of the term to emphasize that our interpretation of "substantially probable" serves equally as an interpretation of "substantial probability."

¶ 23. Curiel presents the first issue on review as one involving interpretation of the term "substantially probable," although throughout his brief he refers to that phrasing of the term and "substantial probability" indiscriminately. The State notes that the legislature used both phrasings in ch. 980, and suggests that the difference between them is at most a slight one and should not be given any significance; it proceeds to use the phrasings of the term interchangeably throughout its argument. We also note that both the circuit court and the court of appeals used the terms interchangeably. Neither party suggests that the phrasings require different definitions, and we are convinced that the legislature intended that the phrasings share a common meaning.

¶ 24. To commit a person as sexually violent, the State must prove beyond a reasonable doubt, among other elements, that "[t]he person is dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in acts of sexual violence." Wis. Stat. §§ 980.05(3)(a) and 980.02(2)(c). The parties dispute the degree of likelihood required to satisfy the term "substantially probable."

¶ 25. Curiel argues that "substantially probable" means "extreme likelihood" and that, therefore, he could not be committed under ch. 980 unless the State proved beyond a reasonable doubt that he was dangerous to others because his mental disorder created an "extreme likelihood" that he would engage in future

403

acts of sexual violence.[5] The State disagrees, arguing that "substantially probable" means "substantially probable" and that ordinary persons can understand and apply this common sense term without further elucidation; it urges that we not redefine the term.

¶ 26. The degree of likelihood intended by the use of the term "substantially probable" requires statutory interpretation. The interpretation of a statute is a question of law that we review *de novo. State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). The purpose of statutory interpretation is to discern the intent of the legislature. *Id.* In discerning the intent of the legislature, we first consider the language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, we do not look beyond the statutory language to ascertain its meaning. *Id.*

¶ 27. In construing a statute, the general rule is that all words and phrases should be construed according to common and approved usage unless a different definition has been designated by the statutes. Wis. Stat. § 990.01(1); *State v. Sher*, 149 Wis. 2d 1, 9, 437 N.W.2d 878 (1989). We may resort to a dictionary to ascertain the common and approved usage of a term not defined by the statute. *State v. Chrysler Outboard Corp.*, 219 Wis. 2d 130, 168, 580 N.W.2d 203 (1998); *see also HM Distrib. of Milwaukee v. Dept. of Agri.*, 55 Wis.

[5] Curiel's position on this point is difficult to pin down. He at times argues that the term means "extreme likelihood." At other times, he implicitly suggests that the term means "much more likely than not." Indeed, his only suggested interpretation of the term in the court of appeals was "much more likely than not."

2d 261, 269, 198 N.W.2d 598 (1972). Our resort to a dictionary to determine the common and approved usage of the term does not render the term ambiguous. *State v. Sample*, 215 Wis. 2d 487, 499, 573 N.W.2d 187 (1998).

¶ 28. Because "substantially probable" is not defined by statute, we turn to a dictionary. We look first to the term "probable" and conclude that its most common and appropriate usage is "more likely than not." The American Heritage Dictionary defines "probable" as an adjective meaning: "1. Likely to happen or to be true: *War seemed probable in 1938. The home team, far ahead, is the probable winner.* 2. Likely but uncertain; plausible." *The American Heritage Dictionary of the English Language* at 1443 (3d ed. 1992). The common sense of "probable" in both of these definitions is that there is a greater likelihood that an event will happen than that it will not happen: that is, that it is more likely than not that the event will happen. Further, in keeping with our conclusion that "probable" and "probability" are intended to share a common meaning, we note that the definitions of "probable" and "probability" are most closely analogous where "probable" is defined as "[h]aving more evidence for than against" and "probability" is defined as "a condition or state created when there is more evidence in favor of the existence of a given proposition than there is against it." *Black's Law Dictionary* at 1201 (6th ed. 1990).

¶ 29. The term "substantially" must also be given effect, otherwise the term is superfluous, a result we avoid in construing a statute. *Sher*, 149 Wis. 2d at 9. Although numerous definitions for "substantially" are provided by *The American Heritage Dictionary*, we conclude that the most common and appropriate definition

of the term as used in ch. 980 is "[c]onsiderable in importance, value, degree, amount, or extent: *won by a substantial margin." The American Heritage Dictionary of the English Language* at 1791. A word which commonly denotes this sense of "substantially" is the term "much," defined as "[g]reat in quantity, degree, or extent." *Id.* at 1183.

¶ 30. Given the common and appropriate usage of the term, we interpret "substantially probable" as meaning "much more likely than not," and as so construed, find that the sections in which this term is found to be unambiguous. The legislature intended that the State prove beyond a reasonable doubt that the person subject to the commitment proceedings is dangerous because his or her mental disorder makes it "much more likely than not" that the person will engage in future acts of sexual violence.

¶ 31. We find unpersuasive both of Curiel's arguments in support of defining "substantially probable" as "extreme likelihood." His first argument implicitly begins with the premise that the statute is not ambiguous, and as did we, he turns to a dictionary to identify the common and appropriate usage of the term. Curiel agrees with our conclusion that probable means "more likely than not" but prefers that "substantially" be defined as "extreme."[6] We disagree. First, he provides us with no evidence that "extreme" is a common and appropriate usage of the term "substantially." Second, "substantially" and "extreme" are not synonyms—"extreme" appears to us to involve a degree of certainty far greater than that suggested by the term

---

[6] Although when arguing that the evidence was not sufficient to support his verdict, he explicitly states that "much more likely than not" is an appropriate legal standard for the term "substantially probable."

"substantially". Indeed, *The American Heritage Dictionary* defines "extreme" as an adjective meaning: "1. Most remote in any direction; outermost or farthest." "2. Being in or attaining the greatest or highest degree; very intense." "3. Extending far beyond the norm." "4. Of the greatest severity." *The American Heritage Dictionary of the English Language*, at 650. None of these definitions suggests that "extreme" is a common and appropriate usage of the term "substantially."

¶ 32. In a second argument, now with a view to the statute's ambiguity, Curiel offers legislative history as support for his view that "substantially probable" means "extreme likelihood." We have already determined that the term "substantially probable" is not ambiguous; in most circumstances we would not then consider matters outside the language of the statute for evidence of legislative intent. However, because Curiel's equal protection argument is grounded in his interpretation of the legislative history of both ch. 980 and ch. 51, the Mental Health Act, we believe that his argument detailing the legislative history of the two chapters should be addressed here.

¶ 33. We understand Curiel's argument to be the following: The term "substantially probable" was adopted in ch. 980 to provide consistency with ch. 51, which uses the term "substantial probability." Much in the manner in which the term is used in ch. 980, "substantial probability" is used in ch. 51 to describe the degree to which a person is likely to harm himself, herself, or others before he or she could be found "dangerous."[7] In 1972, the predecessor to the current ch. 51 was held unconstitutional in a number of respects,

---

[7] Wis. Stat. § 51.20(1)(a)2.a–d (1997–98), provides in part:

2. The individual is dangerous because he or she does any of the following:

including the statute's lack of a requirement that the State prove dangerousness. *See Lessard v. Schmidt,* 349 F. Supp. 1078, 1093 (E.D. Wis. 1972), *vacated and remanded, Schmidt v. Lessard,* 414 U.S. 473 (1974), *order on remand,* 379 F. Supp. 1376 (E.D. Wis. 1974), *vacated and remanded on other grounds,* 421 U.S. 957 (1975), *order reinstated on remand,* 413 F. Supp. 1318 (E.D. Wis. 1976). In discussing the degree of dangerousness that it believed was constitutionally required before a person could be involuntarily deprived of liberty, the court in *Lessard* used the term "extreme likelihood." Referring to *Humphrey v. Cady,* 405 U.S. 504, 509 (1972), the court wrote:

> [I]ts approval of a requirement that the potential for doing harm be 'great enough to justify such a massive curtailment of liberty' implies a balancing test in which the state must bear the burden of proving

a. Evidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm.

b. Evidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm. . . .

c. Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself. . . .

d. Evidences behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness.

that there is an extreme likelihood that if the person is not confined he will do immediate harm to himself or others.

*Lessard*, 349 F. Supp. at 1093. Curiel concludes that because the legislature revised ch. 51 in response to *Lessard*, the term "substantial probability," used to define the likelihood that the person may do immediate harm, must have been intended to mean "extreme likelihood."

¶ 34. We have reviewed the legislative history of both ch. 980 and ch. 51 and are not convinced. Moving as Curiel asks us to from the revision of ch. 51 in 1976 to the current ch. 980 requires us to take too many leaps of faith to arrive at the conclusion he would have us reach.

¶ 35. Our review of a Drafters Note from the Legislative Reference Bureau does satisfy us that the term "substantially probable" was chosen in an effort to use terms consistently throughout the statutes. The author of the note explained that where the draft of ch. 980 had provided that "a person must be 'likely' to commit predatory acts of sexual violence," he had "changed the language to say the person must be 'substantially probable' to commit such acts," and in doing so compared the new language to that found in Wis. Stat. § 51.20(1)(a)2.a–d. *See* LRB Drafter's Note to 1994 A.B. 3, (LRB–2975/P2dn) (Oct. 15, 1993).

¶ 36. While the language in ch. 980 may have been chosen to be consistent with language in ch. 51, we disagree with Curiel's proposition that "substantial probability" in ch. 51 means "extreme likelihood." While it is true that the court in *Lessard* found the predecessor to the current ch. 51 unconstitutional in various respects, including the absence of proof of a person's dangerousness, there is no explicit evidence in

the legislative history that the term "substantial probability" was chosen by the legislature as a term synonymous with "extreme likelihood."

¶ 37. First, we note that the legislature did not originally choose the term "substantial probability" in ch. 51, it chose the term "substantial risk." *See* Wis. Stat. § 51.20(1)(a)2.[8] Legislative history does not reveal that "substantial risk" was chosen to meet the language of *Lessard*. And just as there is no evidence that "substantial risk" was chosen as a synonym of "extreme likelihood," there is no evidence that when the legislature amended Wis. Stat. § 51.20 in 1977 and replaced "risk" with "probability," it did so with a view that "probability" and "risk" were synonymous, or the view that "substantial probability" and "extreme likelihood" were synonymous. *See* § 29, ch. 428, Laws of 1977 and Legislative Reference Bureau Analysis of 1977, Assembly Bill 898.

¶ 38. We also find persuasive the State's argument that legislative intent may be observed in the legislature's decision not to use the term "extreme likelihood." The State suggests that the fact that the legislature chose a term other than that used in *Lessard* is evidence that the legislature did not intend an "extreme likelihood" standard. The State further

---

[8] Wis. Stat. § 51.20(1)(a)2 (1975–76) provided that a person is dangerous because of:

a. A substantial risk of physical harm to the subject individual as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm; or

b. A substantial risk of physical harm to other persons as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do such physical harm;

points out that when the legislature was revising ch. 51, *Lessard* was twice appealed, remanded, and vacated, undermining the persuasive authority of the first decision. In fact, we note that on remand in *Lessard v. Schmidt*, 379 F. Supp. 1376 (E.D. 1974), the court did not again use the term "extreme likelihood." In describing the findings and standard of proof necessary for an order of commitment, the court wrote that they were " 'mental illness and imminent dangerousness to self or others beyond a reasonable doubt' based at minimum upon a recent act, attempt or threat to do substantial harm." *Id.* at 1381. The absence of the "extreme likelihood" standard in this opinion does place a cloud upon the precedential worth of the court's earlier decision.

¶ 39. As an additional document in support of his position, Curiel refers us to 71 Op. Att'y Gen. 34 (1982). We agree with the court of appeals in its discussion of this opinion in *State v. Kienitz*, 221 Wis. 2d 275, 585 N.W.2d 609 (Ct. App. 1998), *petition for review granted*, 221 Wis. 2d 653, 588 N.W.2d 631 (1998), that the opinion does not focus upon the meaning of "substantial probability" and therefore its worth is fairly suspect as evidence of legislative intent. *See id.* at 299. Furthermore, we do not find that an attorney general opinion filed in 1982 is evidence of the legislature's intent when drafting a statute in 1976. *Cf. Juneau County v. Courthouse Employees*, 221 Wis. 2d 630, 648, 585 N.W.2d 587 (1998) (post-enactment interpretations by a legislative agency that worked with the legislature during the adoption of the statutory provisions may be an aid in determining legislative intent, although they may be less persuasive than reports issued prior to enactment).

411

¶ 40. As do we, the State believes that the statute is not ambiguous, and that in the event that legislative history is considered, Curiel's position is without support. However, it argues that we should not redefine the term "substantially probable" but leave the definition to the trier of fact. We are not persuaded by the State's arguments.

¶ 41. First, the State argues that since the term "substantial probability" has not been the source of any confusion in the application of ch. 51 and therefore has not required definition, by analogy the term should not need definition here. This argument fails because unlike the use of the term in ch. 51, its use in ch. 980 has created difficulties: in this case, the three experts offered three different personal working definitions; the court of appeals in this case, and the court of appeals in *Kienitz*, contributed two additional definitions.

¶ 42. The State also suggests that just as this court has not defined other legal terms, the definitions of which are difficult to articulate, we should avoid doing so here. It offers "reasonable doubt" and "substantial risk" as terms which although difficult to articulate have not been redefined in favor of allowing the trier of fact to employ his or her own understanding of the terms. That we have chosen not to define the terms the State points to in the contexts in which they are used does not dissuade us from defining "substantially probable" here. We believe that it is incumbent upon this court to define "substantially probable" in accord with legislative intent.

■

¶ 43. In sum, we do not find that matters outside the language of the statute provide any evidence of the legislature's intent in its use of the term "substantial

probability." We do believe that the term is unambiguous, its common and appropriate usage meaning "much more likely than not."

## Equal Protection

¶ 44. As we have not defined the term "substantially probable" in ch. 980 as "extreme likelihood," Curiel challenges the constitutionality of ch. 980 on grounds of equal protection. He claims a single substantive difference between the statutory schemes for commitment under ch. 51 and ch. 980: satisfying the standard of dangerousness requires the State prove to a greater likelihood the probability that a person will harm himself, herself, or another under ch. 51 than is required to prove that a person will sexually reoffend under ch. 980.

¶ 45. Persons committed under chapters 51 and 980 are similarly situated for purposes of equal protection comparison. *State v. Post*, 197 Wis. 2d 279, 318–19, 541 N.W.2d 115 (1995). Equal protection guarantees require that persons similarly situated be accorded similar treatment *State v. Avila*, 192 Wis. 2d 870, 879, 532 N.W.2d 423 (1990)(citing *Walters v. City of St. Louis*, 347 U.S. 231, 237 (1954)). However, this does not require that all persons be dealt with identically. *Id.* Equal protection is not violated where there exist reasonable and practical grounds for the classifications created by the legislature. *State v. Hezzie R.*, 219 Wis. 2d 849, 894, 580 N.W.2d 660 (1998). Nor is equal protection violated where similarly situated people are not treated differently.

¶ 46. "When a party attacks a statute on the grounds that it denies equal protection under the law,

413

the party must demonstrate that the state unconstitutionally treats members of similarly situated classes differently." *Post*, 197 Wis. 2d at 318. Curiel's equal protection challenge fails because Curiel has not demonstrated that persons committed under ch. 51 are treated differently than persons committed under ch. 980.

¶ 47. We have already considered the legislative histories of ch. 980 and ch. 51 and have concluded that the histories do not support Curiel's claim that ch. 51 requires that the State prove that the likelihood that a person will harm another is "extreme." Both ch. 980 and ch. 51 employ a "substantial probability" standard. We held that the term "substantially probable" as used in ch. 980 means "much more likely than not." As the terms are to be used in a consistent manner between the chapters, we can conceive of no reason why the term as used in ch. 51 should be construed any differently than it is under ch. 980.

### Void for Vagueness

¶ 48. Curiel also argues that the court of appeals' failure to define "substantially probable" is a violation of his right to due process—we recognize his argument as one challenging the statute on grounds that it is void for vagueness. Because we have concluded that "substantially probable" means "much more likely than not," Curiel's void for vagueness argument fails as well.

¶ 49. The "principles underlying the void for vagueness doctrine. . .stem from concepts of procedural due process." *State v. Popanz*, 112 Wis. 2d 166, 172, 332 N.W.2d 750 (1983). "Due process requires that the law set forth fair notice of the conduct prohibited or

required and proper standards for enforcement of the law and adjudication." *Id.* Based upon these concepts of due process, a statute is void for vagueness if it fails to give notice to those wishing to obey the law that their conduct falls within the proscribed area, or if it fails to provide those who must enforce and apply the law objective standards with which to do so. *Id.* at 172–73.

¶ 50. Curiel challenges the statute because he believes that it fails to provide those who must apply the law objective standards with which to do so. With this view of the void for vagueness doctrine in mind, we must determine whether the statute fails to be sufficiently definite to allow judges, juries and expert witnesses to apply the terms of ch. 980 objectively to the question before them in order to determine whether to commit the defendant without having to create or apply their own standards. *See Popanz,* 112 Wis. 2d at 173 (citing *State v. Courtney,* 74 Wis. 2d 705, 711, 247 N.W.2d 714 (1976)).

¶ 51. As "substantially probable" means "much more likely than not," we have no doubt that this definition provides proper standards of adjudication. The statute as defined is not so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability. *See Peissig v. Wisconsin Gas Co.,* 155 Wis. 2d 686, 699, 456 N.W.2d 348 (1990). Sufficiency of the Evidence

¶ 52. The parties dispute the appropriate standard by which we should review whether the evidence is sufficient to sustain the verdict. Curiel argues that because ch. 980 is a civil commitment proceeding, the standard of review should be a mixed question of law and fact. Curiel relies on the standard of review articulated by the court of appeals in *K.N.K. v. Buhler,* 139

Wis. 2d 190, 407 N.W.2d 281 (Ct. App. 1987), a case involving the protective placement of an incompetent person under ch. 55:

> We view the elements of protective placement set out in sec. 55.06(2), Stats., as questions of fact. *See* sec. 55.06(7) (trier of fact 'must find by clear and convincing evidence' the elements of sec. 55.06(2)); sec. 880.33, Stats. (referring to 'findings' of incompetency). We will not overturn the circuit court's findings of fact unless clearly erroneous. Sec. 805.17(2), Stats. However, we view the higher question regarding the necessity for protective placement as one of law because it involves the application of the facts as found by the court to a statutory concept. *See Nottelson v. DIHLR*, 94 Wis.2d 106, 115–16, 287 N.W.2d 763, 768 (1980). We review questions of law independently from a circuit court's conclusions. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

*Id.* at 198. The State disagrees and argues that the standard of review should be that which applies to all sufficiency of the evidence challenges in criminal cases. In *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990), we explained the standard for reviewing the sufficiency of the evidence in a criminal case:

> an appellate court may not reverse a conviction unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.

*Id.* at 501.

¶ 53. Aside from describing these competing standards of review, neither party provides *reasons*

why one or the other standard of review is appropriate for ch. 980 proceedings. Nonetheless, we conclude that the standard of review appropriate to commitment under ch. 980 is that standard we use to review criminal convictions.

¶ 54. Most important to our decision is the fact that while ch. 980 is a civil proceeding, *State v. Carpenter*, 197 Wis. 2d 252, 258, 541 N.W.2d 105 (1995), it shares many of the same procedural and constitutional features present in criminal prosecutions. Pursuant to Wis. Stat. § 980.05(1m), "all rules of evidence in criminal actions apply" and "[a]ll constitutional rights available to a defendant in a criminal proceeding are available to the person" subject to the petition for commitment. Furthermore, as in a criminal proceeding, the State's burden of proof under ch. 980 is beyond a reasonable doubt. Wis. Stat. § 980.05(3)(a).

¶ 55. Because of the parallels between ch. 980 proceedings and criminal actions, review of ch. 980 proceedings will quite frequently involve applying much of the existing case law involving evidentiary and constitutional issues in criminal cases to ch. 980 appeals. This may be particularly true where sufficiency of the evidence questions are interwoven with the discussions of the reasonable doubt standard. For the purposes of clarity, particularly, use of the criminal standard of review is appropriate in ch. 980 appeals.

¶ 56. Further, the only support offered by Curiel that the standard of review should be civil in nature is the language quoted above from *K.N.K.* The court in *K.N.K.* explained that it would treat the statutory elements of ch. 55, governing protective placements, as findings of fact, reviewing them under the clearly erroneous standard. *K.N.K.*, 139 Wis. 2d at 198. It explained further that it would review *de novo* "the

higher question regarding the necessity for protective placement." *Id.* However, as a practical matter, the court found that the evidence was sufficient to support each element of the statute and reviewed nothing *de novo. See id.* at 198–204.[9]

██

¶ 57. We apply the standard of review applicable to criminal trials held to the court:

> The burden of proof upon the state is the same whether the case is tried before a jury or before a court. That burden is to prove the defendant guilty beyond a reasonable doubt. The test applied upon appeal to this court is whether the 'evidence adduced, believed and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt.'
>
> As the burden of proof is the same whether the trial is to the court or to a jury, the test to be applied to determine the sufficiency of the evidence is the same.
>
> When testing the sufficiency of the evidence, this court is not required to be convinced of the guilt of the defendant beyond a reasonable doubt, but only

---

[9] The purpose evidently underlying Curiel's argument is that he would have us review *de novo* whether the evidence was sufficient to support a finding that it was substantially probable that he would engage in an act of sexual violence. However, the court in *K.N.K. v. Buhler*, 139 Wis. 2d 190, 407 N.W.2d 281 (Ct. App. 1987), clearly treated the analogous "elemental" question under ch. 55 as one of fact and reviewed it under the clearly erroneous standard. *See id.* at 202–03. Even should we have decided to review ch. 980 actions as a mixed question of fact and law, the question of whether evidence established that it was substantially probable is one of fact and would be reviewed under a clearly erroneous standard, not *de novo*.

that the jury or the court could find the defendant guilty beyond a reasonable doubt.

*Gauthier v. State*, 28 Wis. 2d 412, 415–16, 137 N.W.2d 101 (1965)(internal citations omitted). Of course, in the context in which this standard is applied, we recognize that the State's burden is not to prove a person's guilt, but rather that the person subject to commitment is a sexually violent person.

¶ 58. With respect to the only question on which Curiel claims the evidence was insufficient, the State has the burden of proving beyond a reasonable doubt that the person is dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in future acts of sexual violence. Under the interpretation of the standard that we articulated above, the State must prove that because of the person's mental disorder, it is much more likely than not that the person will engage in future acts of sexual violence.

¶ 59. Curiel believes that the evidence was insufficient because Sindberg, the only witness who testified that it was much more likely than not that he would reoffend sexually, is a less credible witness than either Waddell or Lodl. Sindberg is less credible, argues Curiel, because Sindberg did not personally meet with him prior to reaching an opinion as to the likelihood that he would reoffend. Curiel also argues that regardless of Sindberg's testimony, the fact that he and Waddell presented inconsistent testimony on the likelihood of him engaging in future acts of sexual violence is demonstrative that the State has not carried its burden.

¶ 60. We find that the evidence was sufficient to establish beyond a reasonable doubt that it was "much

more likely than not" that Curiel would engage in future acts of sexual violence. To be sure, only Sindberg testified that he believed that it was "much more likely than not" that Curiel would reoffend sexually. However, his testimony alone is sufficient to sustain the circuit court's judgment and order of commitment. We explained in *Gauthier* that

> The credibility of the witnesses is properly the function of the jury or the trier of fact. . . .It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the fact finder, who has the great advantage of being present at the trial.

*Gauthier*, 28 Wis. 2d at 416. We have further explained that inherently or patently incredible evidence is that type of evidence which conflicts with nature or fully established or conceded facts. *Day v. State*, 92 Wis. 2d 392, 400, 284 N.W.2d 666 (1979).

¶ 61. The circuit court clearly found Sindberg's testimony credible. At the close of the State's case, the circuit court explained that there was nothing in the record to challenge Sindberg's opinion to the degree necessary to throw it out. Further, Curiel has not shown that Sindberg's evaluation, made without personally interviewing him, was incredible as to be undeserving of any weight.[10]

---

[10] In fact, were we to agree with Curiel—which we don't—that an expert must personally meet the person subject to commitment, commitment under ch. 980 could be virtually impossible. By the logic of Curiel's argument, the circuit court would be required to find the witness who had spoken with the subject of commitment more credible than the witness who did not. One problem with this view is that as here, the defense

¶ 62. Nor does the inconsistent testimony of Sindberg and Curiel render Sindberg's testimony incredible as a matter of law. *Embry v. State*, 46 Wis. 2d 151, 156–57, 174 N.W.2d 521 (1970). Even under the reasonable doubt burden of proof, the trier of fact is allowed to accept or reject inconsistent testimony. *Id.* In finding that Curiel was dangerous, the circuit court quite obviously resolved any inconsistency in the testimony of the experts in favor of finding that Curiel was much more likely than not to sexually reoffend. However, it is the trier of fact's task, not this court's, to sift and winnow the credibility of the witnesses. *State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W.2d 386 (Ct. App. 1985). Certainly, as the circuit court noted, Sindberg's testimony was worthy of belief. The credibility of an expert witness and the weight the trier of fact is going to give to his testimony, as contrasted to other witnesses, is always an issue that is properly before the trier of fact. *Kemp v. State*, 61 Wis. 2d 125, 136, 211 N.W.2d 793 (1973).

¶ 63. Here, the circuit court was entitled to find Sindberg's opinion more credible than that of Waddell or Lodl. The State's evidence was not so lacking in probative value that no trier of fact, acting reasonably, could have drawn the appropriate inferences from the evidence adduced to find beyond a reasonable doubt that Curiel is a sexually violent person under ch. 980.

---

witness will have access to the subject and the State witness may not. The result of this approach is clear, and not one with which we agree: A person subject to commitment could avoid commitment merely by refusing to speak with the State's witness.

¶ 64. Curiel has also maintained that the circuit court made an error in its finding of fact that Lodl testified that Curiel was a high risk for reoffending criminally. We observe that immediately following this comment, the circuit court correctly recited the expert opinions of all three witnesses. There is no evidence in the record that the circuit court relied upon its first misstatement in finding that Curiel was a sexually violent person.

### III

¶ 65. In conclusion, this court holds that the standard by which to determine whether it is substantially probable that a person will engage in future acts of sexual violence is whether the likelihood is "much more likely than not." This standard does not violate the guarantees of equal protection, nor is it void for vagueness. Finally, the evidence adduced at trial was sufficient to prove beyond a reasonable doubt that the defendant was much more likely than not to engage in future acts of sexual violence.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 66. JUSTICE DAVID T. PROSSER, JR. did not participate.