HRUZ, J.[1]
¶ 1 D.K. (to whom we refer using the pseudonym "Donald," see WIS. STAT. RULE 809.19(1)(g) ) appeals WIS. STAT . ch. 51 orders for involuntary commitment and for involuntary medication and treatment. Donald argues the County[2] failed to prove by clear and convincing evidence that he was dangerous as defined under WIS. STAT . § 51.20(1)(a) 2.b. We affirm.
¶ 2 Psychologist Dr. Jagdish Dave, the sole witness at Donald's commitment hearing, completed a status evaluation of Donald, which included Dave's reviewing Donald's medical records and interviewing him. From that information, Dave concluded Donald had a "delusional disorder" that impaired his "judgment and capacity to recognize reality" and that affected his "ability to perform ordinary demands of life and behavior." Also, Dave opined Donald was dangerous because he made specific threats to kill and strangle others that were "directly related" to Donald's delusional disorder.
¶ 3 Following Dr. Dave's testimony, the circuit court concluded that grounds for commitment and treatment were met. Of note, the court specified that it found Donald was dangerous pursuant to WIS. STAT . § 51.20(1)(a) 2.b. due to his homicidal threats to others. Donald now appeals from the six-month-long commitment and treatment orders that the circuit court entered after the hearing.[3]
¶ 4 In a WIS. STAT . ch. 51 proceeding, a petitioner (here, the County) must prove by clear and convincing evidence that a subject individual is mentally ill, a proper subject for treatment, and dangerous. WIS. STAT . § 51.20(1)(a), (13)(e). Review of a ch. 51 order presents a mixed question of fact and law. The circuit court's findings of fact shall not be disturbed unless they are clearly erroneous. Winnebago Cty. v. Christopher S. , 2016 WI 1, ¶ 50, 366 Wis. 2d 1, 878 N.W.2d 109, cert. denied , 136 S. Ct. 2464 (2016). Interpretation and application of the facts to the statutory standards presents a question of law that is reviewed independently. Id.
¶ 5 Donald only disputes the circuit court's dangerousness determination and does not challenge any findings of fact. Under WIS. STAT . § 51.20(1)(a) 2.b., an individual is dangerous if he or she
[e]vidences a substantial probability of physical harm to other individuals as manifested ... by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm.
"Substantial probability" in this definition means "much more likely than not." See State v. Curiel , 227 Wis. 2d 389, 414, 597 N.W.2d 697 (1999).
¶ 6 Donald contends Dr. Dave's testimony failed to satisfy WIS. STAT . § 51.20(1)(a) 2.b. for two primary reasons. First, Donald argues the County failed to prove that he evidences a "substantial probability" of harm to others. His argument focuses on certain word choices that Dave used while being cross-examined. In particular, defense counsel asked Dave whether Donald met the diagnostic criteria for a "delusional disorder." Dave answered that Donald "was acting on his delusional belief and he could be potentially dangerous." Defense counsel then asked whether Donald was acting "markedly ... impaired" and exhibiting "bizarre and odd behavior." Dave reiterated, "He was ... markedly impaired. He can act on those thoughts and he can become potentially dangerous." Dave also spoke to one of the nursing staff and learned from them that Donald continued to have "delusional feelings," and Dave affirmed that Donald "could still be potentially dangerous," despite treatment.
¶ 7 Donald seizes on Dr. Dave's "potentially dangerous" statements to argue that "potentially dangerous" does not equate to "substantial probability." In essence, Donald contends Dave's testimony, as a whole, failed to show that Donald would actually "follow through" on any of his threats, largely because of Dave's occasional use of the phrase "potentially dangerous."
¶ 8 This argument does not withstand scrutiny when we consider the entirety of Dr. Dave's testimony and the significant nexus Dave recognized between Donald's delusions and his threats to harm others. According to Dave, Donald's paranoia caused him to think about harming other people who, in Donald's unsupported views, were stalking, harassing, lying about, and mocking him. This paranoia also caused Donald to make threats against the local police department because he believed it was ignoring his complaints. Donald had otherwise expressed to Dave thoughts about harming others, but Dave was unaware if Donald had acted on those thoughts. Specifically, Dave testified that Donald told him during the evaluation that Donald "plans on strangulating the police officer and also killing the people who made fun of him." (Emphasis added.) In making his "potentially dangerous" statements, Dave simply recognized that Donald's delusional disorder meant there was a danger he would act upon his threats to others. Those statements, while certainly connoting a risk of harm less than a "substantial probability," are not inconsistent with a further opinion of dangerousness as defined in WIS. STAT . § 51.20(1)(a) 2.b.
¶ 9 And therein lies the rub. Donald ignores the fact that Dr. Dave unequivocally concluded, in his expert opinion, that Donald "presented a substantial risk of danger" to other people, due in large part to the direct nexus between his disorder and his threats. It is this opinion that speaks to the substantial probability standard. The following exchange between defense counsel and Dave on cross-examination illustrates why this nexus is significant here:
Q. When [Donald] spoke to you about his thoughts, could you tell whether or not he was saying something he was going to act on or maybe just speaking in anger more like it's expressed in something and using it as a phrase that he would like to hurt someone? Could you tell the difference[,] I guess?
A. I don't think I can make the difference whether he will act on his thoughts or not.
Q. But you're familiar with some people that get upset and may say I would like to strangle someone when they really are just saying that for verbal impact but not actually going to do it. Do you know that difference?
A. When it is expressed in the context of a delusional thought, that it is most possibly that he might act on those thoughts not realizing that these are not ... real thoughts.
(Emphasis added.) Quoting Dave's first answer out of context, Donald argues the County failed to show Donald was "more likely than not going to actually engage in serious harm." Not so. Dave plainly observed that Donald's delusional disorder strongly signaled Donald's threats were actionable thoughts of harming others, not idle rhetoric. And Donald was undoubtedly exhibiting his delusional disorder by making multiple, significant threats of harm to others.[4] To the extent Donald criticizes Dave's testimony as "speculat[ive]," WIS. STAT . § 51.20(1)(a) 2.b. did not require Dave, in providing an expert opinion, to be clairvoyant of Donald's future acts in order to establish a "substantial probability" of harm due to Donald's recent threats and his medical diagnosis.
¶ 10 Second, Donald observes that none of the persons against whom he directed his threats testified about their "reactions" to them. Without this evidence, he contends the County failed to prove his threats placed anyone in "reasonable fear of violent behavior and serious physical harm." This argument is premised on a faulty interpretation of WIS. STAT . § 51.20(1)(a) 2.b. In R.J. v. Winnebago County , 146 Wis. 2d 516, 431 N.W.2d 708 (Ct. App. 1988), this court interpreted § 51.20(1)(a) 2.b. as requiring evidence only of the mental state and objective acts of the individual petitioned for commitment. R.J. , 146 Wis. 2d at 521-22. The R.J. court concluded that, under this standard, "a showing can be made that others are placed in a fearsome position by a disturbed person's actions even if the person placed in that position has no subjective awareness of it." Id. at 523. As the County correctly argues, the targets of Donald's threats did not have to testify about any "reactions" or subjective beliefs in response to those threats for the County to establish dangerousness. See id. at 522-23. Doctor Dave's testimony sufficed.
¶ 11 At most, Donald suggests in his reply brief that his specific threats were insufficient under WIS. STAT . § 51.20(1)(a) 2.b. because the threats in R.J. -apparently unlike his own-were "graphic" in nature and thus, presumably, "much more than a possibility." See R.J. , 146 Wis. 2d at 523. Donald misses the R.J. court's point. To be sure, this court observed that R.J.'s threats to a nurse were "quite graphic"-without elaborating on the details of her threats, other than to say they described "how she would cut the nurse and where"-when concluding her threats "engender[ed] reasonable fear of harm." R.J. , 146 Wis. 2d at 523. Likewise, while in Dr. Dave's presence, Donald specifically threatened strangulation and murder of multiple people for specific, delusional perceptions of his ill treatment by those people. We conclude those "plans" and threats establish a "reasonable fear ... of serious physical harm" under § 51.20(1)(a) 2.b. In sum, the circuit court's dangerousness determination was based upon a correct interpretation of § 51.20(1)(a) 2.b. and was supported by the evidence.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Winnebago County originally petitioned for involuntary commitment and treatment. Venue over the commitment was transferred to Marathon County after the circuit court, the Honorable Karen L. Seifert presiding, entered the Wis. Stat . ch. 51 orders, and after the filing of the notice of appeal. Marathon County now is designated as the petitioner-respondent.

Donald represents that his initial commitment has expired and that the County has not petitioned to extend his commitment. Nevertheless, he argues that this appeal of the commitment order is not moot, in part due to the order's continuing effect of barring him from possessing a firearm. The County does not address this argument in its response brief, so we do not opine on mootness here but rather reach the merits of this appeal. See State v. Verhagen , 2013 WI App 16, ¶ 38, 346 Wis. 2d 196, 827 N.W.2d 891 (unrefuted arguments are deemed conceded).

Donald also appears to contend that he did not engage in what he terms "recent" or "threatening behavior." In this regard, he cites Dr. Dave's testimony that the daily progress notes after Donald was hospitalized showed Donald did not demonstrate abnormalities, delusions, or threatening or violent behavior. This testimony about Donald's behavior while being under treatment does not detract from Dave's opinions and the threats to others that Donald communicated to Dave during the examination. Based on those facts, Dave was opining on Donald's need for involuntary commitment, medication and treatment, and the risks associated without Donald being committed.