IN RE the COMMITMENT OF Peter KIENITZ:

STATE of Wisconsin, Plaintiff-Respondent,

v.

Peter KIENITZ, Defendant-Appellant-Petitioner.

Supreme Court

*No. 97–1460. Oral argument May 4, 1999.—Decided July 2, 1999.*

(Also reported in 597 N.W.2d 712.)

For the defendant-appellant-petitioner there were briefs by *Suzanne Hagopian* and *Mary E. Waitrovich*, assistant state public defenders and oral argument by *Mary E. Waitrovich.*

For the defendant-appellant-petitioner the cause was argued by *Marguerite M. Moeller*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. JON P. WILCOX, J.   The petitioner, Peter Kienitz, seeks review of a published decision of the court of appeals, *State v. Kienitz*, 221 Wis. 2d 275, 585 N.W.2d 609 (Ct. App. 1998), which upheld a dispositional order of the Circuit Court for Dane County, the Honorable Sarah B. O'Brien. The circuit court found Kienitz to be a sexually violent person under Wis. Stat. ch. 980 (1993–94),[1] and ordered his commitment.

---

[1] Wisconsin Stat. ch. 980 was created by 1995 Wis. Act 479, § 40, and became effective on June 2, 1994. All references are to

¶ 2.   The issues presented on appeal to this court are: (1) how should the term "substantially probable" be defined in Wis. Stat. ch. 980; (2) does the failure to define "substantially probable" violate Kienitz's right to equal protection, (3) or render ch. 980 unconstitutionally vague; (4) what is the appropriate standard to review whether evidence is sufficient to sustain a commitment order; (5) based on the expert testimony presented, was there sufficient evidence to establish that there was a "substantial probability" that Kienitz would engage in future acts of sexual violence; and (6) if the evidence was sufficient, is ch. 980 unconstitutional as applied to him. Our decision on the first four issues is governed by the opinion issued today in the companion case, *State v. Curiel*, 227 Wis. 2d 389, 597 N.W.2d 697 (1999).[2] This opinion answers the remaining questions.

¶ 3.·  We find that, the evidence before the circuit court was sufficient to establish beyond a reasonable doubt that it was "much more likely than not" that Kienitz would engage in acts of sexual violence. We further hold that Wis. Stat. ch. 980 is constitutional as applied to him. We affirm the decision of the court of appeals.

---

the 1993–94 version of the statutes, as amended, unless otherwise noted.

[2] In *State v. Curiel*, we held that the standard by which to determine whether it is substantially probable that a person will engage in future acts of sexual violence is whether the likelihood is "much more likely than not." This standard does not violate the guarantees of equal protection, nor is it void for vagueness. *Id.* at 422. We further held that the standard of review applicable to criminal trials is also appropriate for sufficiency of the evidence questions in Wis. Stat. ch. 980 proceedings. *Id.* at 417–19.

## I.

¶ 4. The evidence in the record shows that Kienitz has a long history of sexual violence. In November 1963, he was convicted of indecent behavior with a child and sentenced to 10 years probation with psychiatric treatment. In 1966, he was found to be in violation of the terms of his probation by molesting young boys and was sentenced to an indefinite term in the Wisconsin State Prison system. He was released in 1973.

¶ 5. In November 1977, Kienitz was found to be tying up young boys, including an 11-year old, tickling them, and fondling their penises. He was convicted of first-degree sexual assault.[3] Kienitz was sentenced in February 1978, committed to the Department of Health and Social Services under Wis. Stat. § 975.06(2)(1976), and placed on five years probation.

¶ 6. Kienitz's probation was revoked in September 1980, after he was arrested for sexually assaulting two boys. According to the complaint, Kienitz approached the two 13-year old boys in a park, tied them to a tree, pulled their shorts over their heads, fondled their penises for about one minute, but then untied them when they repeatedly asked him to. Kienitz pled no contest to one count of second-degree sexual assault,[4] was sentenced to an indeterminate term of not more than eight years in prison, and was

[3] Seven additional counts along with the repeater status were dropped per the plea agreement.

[4] The criminal complaint alleged eight separate offenses ranging from second-degree sexual assault, and unlawful restraint of two 13-year old boys; intent to commit a crime against sexual morality involving two 10-year old boys, and unlawful restraint and intent to commit a crime against sexual morality involving one 12-year old boy. Kienitz pled no contest to one count of second-degree sexual assault. The parties do not

ordered to immediate treatment at the Mendota Mental Health Institute (Mendota).

¶ 7. Kienitz was conditionally released from Mendota in March 1988, but one month later, his supervision was revoked due to seven instances of violations of conditions of his parole. Kienitz was returned to Mendota with a mandatory release date of October 4, 1995.

¶ 8. On October 2, 1995, the State filed a petition alleging that Kienitz was a sexually violent person eligible for commitment under Wis. Stat. ch. 980. Kienitz waived his right to a jury trial, and a trial to the court was held.[5]

¶ 9. The only disputed issue at trial was whether there was a substantial probability that Kienitz would engage in future acts of sexual violence.[6] At trial, testi-

---

dispute that this conviction was for a "sexually violent offense" under Wis. Stat. § 980.01(6).

[5] Initially, the circuit court dismissed the State's petition, concluding that Wis. Stat. ch. 980 was unconstitutional. The State appealed. While on appeal, *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995) and *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995) were released upholding ch. 980 against the constitutional challenges. The court of appeals summarily reversed the circuit court's decision and remanded for further proceedings.

[6] In a commitment trial, the State has the burden of proving beyond a reasonable doubt that the person "(1) was convicted, found delinquent, or found not guilty by reason of mental disease or defect of a sexually violent offense; (2) is within 90 days of release from a sentence, commitment, or secured correctional facility arising from a sexually violent offense; (3) has a mental disorder; and (4) is dangerous because that mental disorder creates a substantial probability that he or she will engage in acts of sexual violence." Wis. Stat. §§ 980.02(2) and 980.05(3)(a); *Post*, 197 Wis. 2d at 297–98.

mony was taken from a number of lay and expert witnesses.[7]

¶ 10. The State presented two expert witnesses, Donald Irwin, Ph.D., director of psychology at Winnebago Mental Health Institute, and Ronald Sindberg, Ph.D, a psychologist at Mendota. The defense presented Michael Caldwell, Ph.D., a psychologist employed at Mendota, as its expert. All three reviewed Kienitz's correctional, psychiatric and institutional records; Kienitz only allowed Dr. Caldwell to interview him. The experts agreed that Kienitz had the mental disorder of pedophilia with the state's experts testifying that the mental disorder creates a substantial probability that Kienitz will engage in future acts of sexual violence. Dr. Caldwell placed his chances of recidivism at 48%.

¶ 11. In determining substantial probability of future acts of sexual violence, Dr. Irwin defined "substantially probable" to mean "more than more likely than not." He testified that it was his opinion that Kienitz's mental disorder creates a substantial probability that he will commit sexually violent acts in the future. Dr. Irwin based his conclusion, utilizing his own methodology, on several risk factors identified in various studies which indicated that Kienitz would commit sexually violent acts in the future. Using the violence risk assessment guide (VRAG) which predicts recidivism for sex crimes as well as non-sex crimes, Dr. Irwin concluded that Kienitz was in the range of individuals who had a recidivism rate of 44% within seven years, and a 58% probability within 10 years.

---

[7] A more detailed account of the witnesses' testimony can be found in the court of appeals decision. *State v. Kienitz*, 221 Wis. 2d 275, 284–89, 585 N.W.2d 609 (Ct. App. 1998).

¶ 12. The State's second expert witness, Dr. Sindberg, testified that based on his review of Kienitz's records, there was a substantial probability that Kienitz would engage in future acts of sexual violence because his behavior was associated with sixteen risk factors used to predict future dangerousness. In forming this opinion, Dr. Sindberg considered factors predictive of future sexually violent acts, and the effectiveness of treatment which might counteract the risk factors.

¶ 13. The third expert witness, Dr. Caldwell, was called by the defense. Dr. Caldwell explained that he used actuarial methods, which had established accuracy rates, instead of analyzing risk factors to determine the likelihood of reoffense. Dr. Caldwell testified that of the five actuarial methods he used, the VRAG was the most reliable. Under the VRAG, Dr. Caldwell placed Kienitz's probability of reoffense to be in the range of 48% within 10 years.[8]

¶ 14. Several lay witnesses also testified at Kienitz's trial. Sandra Reno, Kienitz's probation agent during his term in 1988, discussed Kienitz's most recent experience in the community. Reno testified that during his probation, Kienitz was to have no contact with children, yet he obtained but did not report a

---

[8] As noted by the circuit court, both Drs. Irwin and Caldwell used the VRAG; however, they scored the test differently. The age of index is one of the factors used in computing the VRAG score; Dr. Irwin used Kienitz's age at his first offense, whereas Dr. Caldwell used Kienitz's age at the time of his present incarceration because of recent training he had received. Dr. Irwin also increased the probability of reoffense based on the "ASSESS List Score," while Dr. Caldwell did not make any such adjustment. These differences resulted in a higher probability of reoffense as computed by Dr. Irwin.

job in a bicycle shop where he would be likely to have contact with children. According to Reno, he went on bicycle trips with two children and their parents who he had met through the unreported employment. Reno further testified that he had repeated contact with at least one child through an offer to sell his computer; he had photos, names, and phone numbers of children in his possession; and he was carrying ropes and a knife in his backpack.

¶ 15. Sandy Collins, a nurse at Mendota, testified that while at Mendota, Kienitz was uncooperative towards staff and other patients. She further stated that in 1994, Kienitz received in the mail, materials containing pornographic pictures of children, as well as a magazine containing pictures of young children. According to Collins, as recently as 1995, Kienitz tried to mail computer diskettes to children, but did not do so when questioned by Mendota staff members.

¶ 16. Based on the evidence before it, the circuit court found that the State had met its burden to prove all of the allegations in the petition for commitment beyond a reasonable doubt. The court stated that Dr. Caldwell's testimony, standing alone, would not support a finding of a substantial probability of future acts of sexual violence. However, in the court's view, Dr. Caldwell's testimony coupled with Reno's testimony of her supervision of Kienitz in 1988 strengthened the likelihood that Kienitz would engage in acts of future violence:

> At that time it had been 25 years since his first conviction for a sex offense. He had been imprisoned from 1966 until 1973, and again from 1980 to 1988. If incarceration was to have an effect on his behavior, it should have occurred by then. He had been on probation twice previously and had been revoked

both times. Again, if supervision in the community was to improve Mr. Kienitz's behavior, the improvement should have taken place by that time. While on parole in 1988, Mr. Kienitz was 50 years old. He was on intensive supervision, with rules designed to help him avoid contact with children and the opportunity to re-offend. He broke these rules in many, serious respects. The violations were very deliberate. . . .The testimony of Sandra Reno left no doubt that in 1988 Mr. Kienitz was extensively engaged in efforts to meet and spend time with children with the intent of engaging in future sexual behavior with them. . . .

It is now 8 years later. Mr. Kienitz has engaged in no significant treatment for his pedophilia since being reincarcerated in 1988. He does not communicate any plan to deal with his disease. If released, he will not be under supervision. Experience over the last 33 years of his life, especially the most recent episode of being in the community coupled with the test results obtained by Dr. Caldwell, persuade me beyond a reasonable doubt that there is a substantial probability that Mr. Kienitz will engage in future acts of sexual violence if released.

The court committed Kienitz to institutional care in a secure mental health facility. Subsequently, Kienitz filed post-verdict motions which the circuit court denied.

¶ 17. The court of appeals affirmed the circuit court's order. Rejecting Kienitz's arguments, the court of appeals concluded that there was sufficient evidence from which a reasonable trier of fact could find beyond a reasonable doubt that there was a substantial probability that Kienitz would commit future acts of sexual violence. *Kienitz*, 221 Wis. 2d at 307. The court

dismissed Kienitz's constitutional challenge. *Id.* at 309–10.

## II.

■

¶ 18.   We now turn to Kienitz's challenge to the sufficiency of the evidence. Kienitz argues that the evidence relied upon by the circuit court is insufficient to establish a substantial probability of reoffense. Substantial probability to reoffend means "much more likely than not" that a person will engage in future acts of sexual violence. *Curiel*, 227 Wis. 2d at 422.

¶ 19.   According to Kienitz, the circuit court's determination is based on double counting of factors already taken into account by Dr. Caldwell and erroneous factual findings.

■

¶ 20.   We utilize the criminal standard of review to determine whether there is sufficient evidence to prove a person was a sexually violent person subject to commitment. *Id.* at 418–19. We may not reverse the commitment based on insufficient evidence:

> unless the evidence, viewed most favorably to the state and the [commitment], is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found [the defendant to be a sexually violent person] beyond a reasonable doubt.

*Id.* at 416 (quoting *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990)).

> If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find [that the defendant is

> a sexually violent person], an appellate court may not overturn a verdict even if it believes the trier of fact should not have found [the defendant to be a sexually violent person] based on the evidence before it.

*Poellinger*, 153 Wis. 2d at 507. The trier of fact determines issues of credibility, weighs the evidence and resolves conflicts in testimony. *State v. Gomez*, 179 Wis. 2d 400, 404, 507 N.W.2d 378 (Ct. App. 1993).

¶ 21. Kienitz first argues that the circuit court's assessment of the evidence was fatally marred because it double counted evidence. According to Kienitz, the court relied upon the VRAG score which figured in his prior record and failures on supervision, and then it enhanced Kienitz's probability to reoffend based on these same facts. Kienitz seems to suggest that the court could not consider any evidence factored into his expert's measure of dangerousness.

██

¶ 22. The court of appeals correctly noted that "[t]he [circuit] court was not obligated to accept the weight Dr. Caldwell assigned the various factors in his scoring of the VRAG, nor was it obligated to choose either Dr. Caldwell's or Dr. Irwin's VRAG score and rely solely on that score as a measure of probability." *Kienitz*, 221 Wis. 2d at 308. The trier of fact has the ability to accept so much of the testimony of a medical expert that it finds credible, *State v. Owen*, 202 Wis. 2d 620, 634, 551 N.W.2d 50 (Ct. App. 1996), and it then weighs the evidence and resolves any conflicts in testimony. *Gomez*, 179 Wis. 2d at 404.

¶ 23. We find that the evidence was more than sufficient to establish beyond a reasonable doubt that it was "much more likely than not" that Kienitz would engage in future acts of sexual violence. *Curiel*, 227

Wis. 2d at 422. It is evident from the court's decision that it placed great weight on Kienitz's 25 year criminal history in which he displayed insignificant improvement despite incarceration and treatment efforts, and supervision in the community; his deliberate violations of his rules of supervision, and preparation to reoffend in 1988; his denial of the need for treatment;[9] and his recent involvement with materials relating to or for children while at Mendota. The weight the court attached to this evidence is supported by portions of the testimony of all three experts. The circuit court was entitled to rely on this evidence in determining that it was much more likely than not that Kienitz would reoffend.

¶ 24. We also conclude, as did the court of appeals, that the circuit court's erroneous factual findings do not affect our conclusion on the sufficiency of the evidence. It is uncontested that the circuit court erred in finding that Kienitz was convicted of first-degree sexual assault on November 15, 1977, and again on February 10, 1978. Both dates involved the same charge with the plea entered on the first date, and the sentencing on the second date.

¶ 25. Kienitz argues, however, that the circuit court "unfairly inflated his prior record" and the error was critical to the circuit court's assessment of danger-

---

[9] The court included the following in its findings of fact: In 1990, Kienitz viewed himself as "cured" of pedophilia. In 1993, he did not view himself as having a problem with pedophilia. In 1994, Kienitz stated he is no longer a pedophile and declined treatment. He also refused to participate in any planning for community living and stated that he preferred to remain institutionalized until his mandatory release date rather than have the restrictions of parole. As recently as 1996, Kienitz denied the need for treatment for his pedophilia.

ousness. We note that the error contained in the court's findings of fact and conclusions of law did not carry over into its decision. The court correctly stated that as of 1988, it had been 25 years since Kienitz's first conviction, he had been imprisoned from 1966 until 1973, and again from 1980 to 1988; he had been on probation twice previously and had been revoked both times; and while on parole in 1988, Kienitz very deliberately violated his rules of supervision and "was extensively engaged in efforts to meet and spend time with children with the intent of engaging in future sexual behavior with them."

¶ 26.   It is clear from the circuit court's decision that it did not rely on a specific number of offenses; rather, it considered significant, among other things, the substantial number of prior sexual offenses, as well as Kienitz's history, since his original conviction, of reoffending or preparing to reoffend while under supervision.[10] We conclude that the State's evidence was not so lacking in probative value that no trier of fact, acting reasonably, could have drawn the appropriate inferences from the evidence to find beyond a reasonable doubt that Kienitz is a sexually violent person under Wis. Stat. ch. 980.

---

[10] The United State Supreme Court has commented in *Jones v. United States*, 463 U.S. 354, 364 (1983) that:

> The fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness. Indeed, this concrete evidence generally may be at least as persuasive as any predictions about dangerousness that might be made in a civil-commitment proceeding.

437

## III.

¶ 27. Underlying Kienitz's argument on the sufficiency of the evidence, is his perception of the role of expert testimony in such a determination. Kienitz insists that a determination of dangerousness under Wis. Stat. ch. 980 must be *based on* expert testimony. Because the only expert found reliable by the circuit court, Dr. Caldwell, testified there was not a substantial probability that Kienitz would reoffend, Kienitz argues that the evidence was insufficient to commit him.

¶ 28. We first address Kienitz's mistaken premise that the circuit court found only Dr. Caldwell's testimony to be reliable in predicting dangerousness. In its decision, the circuit court stated that Dr. Caldwell's testimony was "more persuasive" than Drs. Irwin and Sindberg; however, the court nevertheless found "the testimony of the *experts* in this case. . . useful and informative and [the court] relied heavily upon it."[11] The trier of fact is not bound by the opinion of an expert; rather, it can accept or reject the expert's opinion. *State v. Sarinske*, 91 Wis. 2d 14, 48, 280 N.W.2d 725 (1979); *Pautz v. State*, 64 Wis. 2d 469, 476, 219 N.W.2d 327 (1974); *State v. Owen*, 202 Wis. 2d 620, 634, 551 N.W.2d 50 (Ct. App. 1996)(trier of fact may accept certain portions of an expert's testimony while

---

[11] At the post-verdict motion, the circuit court stated:

I chose not to rely particularly heavily on the State's two psychological experts and relied frankly more heavily on [Kienitz's] own expert and the testimony of Ms. Reno. All of the testimony supports the conclusion that I reached.

The court is not bound by the conclusion of any expert. The court can consider the opinions of experts insofar as they assist in reaching a decision, and *I did consider the opinions of all of the witnesses in reaching my conclusion. . . .*[Emphasis added.]

disregarding other portions). We agree with the court of appeals that even though the circuit court "found Dr. Caldwell's methodology more reliable than [that of the other two experts], it does not follow that the court could not, or did not, credit portions of their testimony in making its determination." *Kienitz*, 221 Wis. 2d at 303–04.

¶ 29. Kienitz also makes the argument that a determination of dangerousness under Wis. Stat. ch. 980 must be based on expert testimony. In essence, Kienitz insists that a determination of dangerousness cannot be made without statistical evidence on the probability of reoffense provided by an expert, irrespective of other non-expert testimony and empirical evidence.[12]

¶ 30. Neither this court, nor the United States Supreme Court have squarely addressed whether expert testimony is required for a determination on the question of future dangerousness. In a decision addressing the standard of proof in civil commitments, the Supreme Court commented "[w]hether the individual is mentally ill and dangerous to either himself or others and is in need of confined therapy turns on the *meaning* of the facts which must be interpreted by expert psychiatrists and psychologists." *Addington v. Texas*, 441 U.S. 418, 429 (1979). This was not, however, the holding in the case. *Id.* at 432–33. The Supreme

---

[12] As the court of appeals observed, Wis. Stat. ch. 980 does not require experts testifying in ch. 980 proceedings to adhere to one particular behavioral science methodology to predict future sexual violence, such as Dr. Caldwell's actuarial methods. *Kienitz*, 221 Wis. 2d at 307. We agree that such a requirement would dissolve the important distinction between the legal and behavioral science standards discussed in *Post*, 197 Wis. 2d at 310–11.

Court has also held that expert testimony about a defendant's future dangerousness, while not required at the penalty phase of a capital murder trial, is admissible. *Barefoot v. Estelle*, 463 U.S. 880, 898–901 (1983), *superceded on other grounds by statute*, 28 U.S.C.A. § 2253(c)(2)(West Supp. 1999); *Smith v. Estelle*, 451 U.S. 454, 472–73 (1981).

¶ 31.    Because there was expert testimony on the issue of future acts of sexual violence in this case, we need not decide the broader question of whether expert testimony is required as a matter of law. *See Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 379, 541 N.W.2d 753 (1995); *Netzel v. State Sand & Gravel Co.*, 51 Wis. 2d 1, 6, 186 N.W.2d 258 (1971); and *Cramer v. Theda Clark Mem. Hosp.*, 45 Wis. 2d 147, 150, 172 N.W.2d 427 (1969).

¶ 32.    The credibility of witnesses and the weight given to their testimony are matters left to the trier of fact. *State v. Friedrich*, 135 Wis. 2d 1, 16, 398 N.W.2d 763 (1987). It is the trier of fact's task to sift and winnow the credibility of the witnesses. *State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W.2d 386 (Ct. App. 1985).

¶ 33.    This includes testimony by experts. "The credibility of an expert witness and the weight the trier of fact is going to give to his [or her] testimony, as contrasted to other witnesses, is always an issue that is properly before the trier of fact." *Curiel*, at 421. This court has never bound the trier of fact to the opinion of an expert; rather, it can accept or reject it. *Sarinske*, 91 Wis. 2d at 48; *Pautz*, 64 Wis. 2d at 476; *Owen*, 202 Wis. 2d at 634 (trier of fact may accept certain portions of an expert's testimony while disregarding other portions).

¶ 34.    In this case, the testimony of Drs. Irwin, Sindberg, and Caldwell was admissible as expert testimony. *See State v. Zanelli*, 212 Wis. 2d 358, 379, 569

N.W.2d 301 (Ct. App. 1997). All three experts opined about the nature of Kienitz's disorder; the risk factors that are, or are not predictive of recidivism; and whether those factors were, or were not applicable to Kienitz. Empirical evidence was provided by Kienitz's probation agent and a nurse from Mendota.

¶ 35. Based on Wisconsin's standards, we conclude that the circuit court, as the trier of fact, "was free to weigh the expert's testimony when it conflicted and decide which was more reliable; to accept or reject the testimony of any expert, including accepting only parts of an expert's testimony; and to consider all of the non-expert testimony in deciding whether [there] was [a substantial probability] that Kienitz would commit future acts of violence." *Kienitz*, 221 Wis. 2d at 307.

## IV.

¶ 36. Kienitz's final argument is that if the evidence is sufficient to support a commitment, then the order for commitment violates his right to due process under the United States and Wisconsin constitutions. Kienitz argues that Dr. Caldwell, the only expert found reliable by the circuit court, determined that Kienitz's risk of reoffending was 48% or not more than "kind of a coin toss situation." Kienitz argues that a less than 50% chance of reoffending does not comport with the Wis. Stat. ch. 980 dangerousness standard. We reject Kienitz's due process argument because it is based on two premises which we have previously dismissed.

¶ 37. In part II of this decision, we addressed and denied Kienitz's argument that the court's assessment of the evidence was flawed by its misunderstanding of his prior record and its double counting of factors already taken into account by Dr. Caldwell's actuarial

441

method. We held that the State's evidence was not so lacking in probative value that no trier of fact, acting reasonably, could have drawn the appropriate inferences from the evidence to find beyond a reasonable doubt that Kienitz is a sexually violent person under Wis. Stat. ch. 980.

¶ 38. We also discussed, in part III of the opinion, Kienitz's argument that the circuit court found only Dr. Caldwell's testimony to be reliable in predicting dangerousness. We determined that the circuit court was clear, in its memorandum decision and its statements at the post-verdict motion, that it found the testimony of all of the experts in this case to be useful and informative. The circuit court further explained that it considered the opinions of all of the witnesses in reaching its conclusion. The court, as the trier of fact, is not bound by the testimony of one expert. *Sarinske,* 91 Wis. 2d at 48. Rather, it is free to accept or reject the testimony of any expert, and to consider all of the non-expert testimony in deciding whether there was a substantial probability that Kienitz would commit future acts of sexual violence.

¶ 39. In *Curiel,* we held that "substantially probable," which means "much more likely than not," provides proper standards of adjudication, and is not so obscure that people of common intelligence must necessarily guess at its meaning and differ as to its applicability. *Curiel,* at 415.

¶ 40. In summary, we hold in this case that the evidence was more than sufficient to establish beyond a reasonable doubt that it was much more likely than not that Kienitz would engage in future acts of sexual violence. As applied here, we also conclude that the standard for dangerousness under Wis. Stat. ch. 980

does not violate Kienitz's due process rights as guaranteed by the United States and Wisconsin Constitutions.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 41.   DAVID T PROSSER, JR., J. did not participate.