In re the Commitment of Danny G. Harrell:

State of Wisconsin, Petitioner-Respondent,

v.

Danny G. Harrell, Respondent-Appellant.

Court of Appeals

*No. 2005AP2393. Oral argument November 20, 2007.
—Decided January 31, 2008.*

2008 WI App 37

(Also reported in 747 N.W.2d 770.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Patrick M. Donnelly, assistant state public defender*, Madison. There was oral argument by *Patrick M. Donnelly*.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Michael J. Losse, assistant attorney general*, and *J.B. Van Hollen, attorney general*. There was oral argument by *Michael J. Losse*.

Before Vergeront, Lundsten and Bridge, JJ.

¶ 1. VERGERONT, J. Danny G. Harrell appeals the circuit court's order denying his motion for a new trial under WIS. STAT. ch. 980 (2003–04).[1] He contends the State's psychiatric expert's use of his compelled written statement violated his Fifth Amendment privilege against self-incrimination,[2] that this expert's opin-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The Fifth Amendment to the Unites States Constitution provides, in pertinent part, "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V. This applies to the states through the Fourteenth Amendment, which provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1. *See State v. Mark*, 2006 WI 78, ¶ 2, 292 Wis. 2d 1, 718 N.W.2d 90.

ion and other testimony was therefore erroneously admitted, and that the errors were not harmless.

¶ 2. We agree with Harrell. We conclude that, under Fifth Amendment case law, in addition to Harrell's written statement, the expert's opinion that used this statement must be excluded, as well as other testimony referring to the incident described in the written statement. We further conclude these errors are not harmless. We therefore reverse the circuit court's order, vacate and reverse the judgment that Harrell is a sexually violent person, and remand for a new trial.

## BACKGROUND

¶ 3. In November 1991, Harrell, then twenty-one, was convicted of one count of third-degree sexual assault in violation of WIS. STAT. § 940.225(3) and one count of second-degree sexual assault of a child in violation of WIS. STAT. § 948.02(2). Both incidents involved an eleven-year-old girl for whom Harrell babysat. Harrell was released on parole on September 25, 2001, and was assigned to live in a transitional residential facility. Harrell was returned to custody very soon thereafter, on October 4, 2001, because he was charged with violations of the conditions of his supervision, including making sexual advances to a sixteen-year-old boy. In a written statement to his parole agent dated October 9, 2001, Harrell admitted that he offered to perform oral sex on the boy, told the boy he would like to see him naked, and asked the boy if he could watch him in the shower, which he did.

¶ 4. After a hearing an administrative law judge determined that Harrell's conduct regarding the boy had violated the rules of Harrell's supervision. Harrell's supervision was revoked and he was reincarcerated for

three years. Shortly before the expiration of the three years, the State filed a petition under WIS. STAT. ch. 980 alleging that Harrell was a sexually violent person[3] and should be committed to the custody of the Department of Health and Family Services upon his release from prison.

¶ 5. At the trial the State presented the testimony of two experts. Dr. Anthony Jurek opined that Harrell suffered from paraphilia[4] and a personality disorder with anti-social features, and that these disorders made it more likely than not that he would reoffend. In arriving at the diagnosis of paraphilia, Dr. Jurek took into account the incident with the sixteen-year-old boy and he described the incident. In arriving at his opinion on the likelihood of reoffending, Dr. Jurek used the incident with the sixteen year old in scoring the actuarial instruments and also considered the incident significant because it showed Harrell's lack of progress from treatment while in prison. While Dr. Jurek was explaining how and why he used the incident with the sixteen year old in scoring the actuarial instrument, the

---

[3] A sexually violent person is defined in WIS. STAT. § 980.01(7) as:

> (7) "Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in acts of sexual violence.

For ease of reference we use the term "reoffend" to mean "engage in acts of sexual violence."

[4] Paraphilia, Dr. Jurek testified, is a sexual disorder involving "sexual interest patterns that are a problem for the person."

prosecutor introduced as an exhibit Harrell's written statement. Dr. Jurek described it as "a statement that was made by Mr. Harrell to his parole agent . . . after he had been taken into custody and was no longer on parole in the community." The prosecutor asked: "It somewhat summarizes the nature of the allegations that were raised; is that correct?" and Dr. Jurek answered "yes." The written statement was admitted into evidence, but there was no further reference to it during any witness's testimony.

¶ 6. The State's other expert, Dr. Craig Monroe, opined that Harrell suffered from a mental disorder—pedophilia[5]—but that in his opinion Harrell was not likely to engage in future acts of sexual violence as a result of his pedophilia. Dr. Monroe referred to the incident with the sixteen year old in the context of explaining why that incident was not a basis for his diagnosis or for his opinion on the likelihood of Harrell reoffending.

¶ 7. The defense expert testified that in her opinion Harrell did not suffer from a mental disorder that predisposed him to commit acts of sexual violence; therefore she did not make a further determination whether he was more likely than not to commit future acts of sexual violence as a result of such a disorder.

¶ 8. The jury found that Harrell was a sexually violent person and Harrell appealed. We stayed briefing pending the supreme court's decision in *State v. Mark*, 2006 WI 78, 292 Wis. 2d 1, 718 N.W.2d 90. The court in *Mark* held that WIS. STAT. § 980.05(1m)[6] grants a

_____

[5] Dr. Monroe testified that pedophilia is a type of paraphilia and his diagnosis was pedophilia nonexclusive, meaning that Harrell was attracted to adults in addition to children.

[6] WISCONSIN STAT. § 980.05(1m) provides:

ch. 980 respondent the same rights at the commitment trial as a defendant in a criminal case and, therefore, a respondent's statement is properly excluded under the Fifth Amendment privilege against self-incrimination if it is testimonial, compelled, and incriminating. *Id.*, ¶ 2. Based on *Mark*, Harrell requested that we remand to the circuit court with directions for the court to determine whether Harrell's written statement was compelled and, if it was, whether its admission at trial was harmless error. The State agreed that there should be a remand. We therefore retained jurisdiction and ordered a remand for the circuit court to determine whether Harrell's testimony was compelled and, if it was, whether the introduction of his statement was harmless error.

¶ 9. On remand the circuit court determined that Harrell's written statement was testimonial, incriminating, and compelled, but that its admission was harmless error. The court agreed with the State's argument that in its harmless error analysis it could consider the statements of the sixteen year old and of a witness to the incident, which Dr. Jurek's report listed as information he reviewed. On that basis the court concluded that, even without Harrell's statement, Dr. Jurek's opinion would have been the same.

## DISCUSSION

¶ 10. Harrell contends the circuit court's harmless error analysis was flawed because it relied on

---

(1m) At the trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person.

This statute was repealed by 2005 Wis. Act 434, § 101, enacted May 22, 2006, but the repeal does not affect this appeal.

statements that were not admitted at trial to determine what Dr. Jurek's opinion would have been without Harrell's written statement. According to Harrell, Dr. Jurek's opinion was erroneously admitted because he used Harrell's written statement in arriving at his opinion and, under *Kastigar v. United States*, 406 U.S. 441 (1972), his entire opinion must therefore be excluded as well as the written statement. In Harrell's view, the State cannot show this was harmless error, primarily because the opinions of the other two experts were that Harrell was not a sexually violent person under WIS. STAT. § 980.01(7).

¶ 11. The State responds, first, that Harrell has waived the issue of the admissibility of his written statement by not objecting during the trial and therefore may obtain relief only by establishing that failure to object was ineffective assistance of counsel. On the merits, the State does not contest the circuit court's conclusion that Harrell's written statement was testimonial, incriminating, and compelled. However, in the State's view the only erroneously admitted evidence was Harrell's written statement. According to the State, Dr. Jurek's opinion on Harrell's mental disorder and likelihood of reoffending was properly admitted because his report shows that other sources informed him of what transpired between Harrell and the sixteen year old, and we can therefore conclude that his opinion would have been the same even if he had never seen Harrell's statement. As to other references to the incident by Dr. Jurek and Dr. Monroe, the State asserts that those were properly admitted because they make no mention of the written statement. The admission of Harrell's statement was harmless, in the State's view, because even without it the jury would have chosen to

rely on Dr. Jurek's opinion and his other testimony explaining his opinion, rather than on the opinions of the other two experts.[7]

¶ 12. We begin by addressing the State's waiver argument. When Harrell moved for an order staying this appeal until *Mark* was decided by the supreme court, he asserted in his motion that this issue presented the same issue as *Mark*—whether his right to remain silent under the Fifth Amendment was violated by admission into evidence of the statement he gave his probation agent. We granted the motion, and there was no objection from the State. When Harrell moved for a remand to the circuit court after the supreme court's *Mark* decision was issued, the State did not assert waiver in its response. It did not object to a remand to determine whether Harrell's statement was compelled, and, if it was, whether the error was harmless; but it did object to Harrell's request that we vacate the commitment order before remanding. Based on the State's response, we remanded but did not order a vacation of the commitment. The time for the State to raise waiver of the Fifth Amendment issue was prior to the remand order, and the State had ample opportunity to do so. At this point in the proceedings we decline to apply waiver to the Fifth Amendment issue.[8]

¶ 13. Turning to the merits of the issues before us, we will first consider what evidence was erroneously admitted and then whether the error or errors we identify are harmless.

---

[7] In summarizing the parties' positions, we synthesize the arguments in their briefs and those they made at oral argument.

[8] *But see infra* ¶ 32 for our discussion of waiver of certain other issues.

## I. Erroneously Admitted Evidence

¶ 14. Both parties agree that, because Harrell's written statement was testimonial, incriminating, and compelled, under *Mark*, 292 Wis. 2d 1, its admission as part of the State's case infringed on Harrell's privilege against self-incrimination. They disagree whether the Fifth Amendment requires exclusion of only the written statement or, in addition, exclusion of other references to the incident it describes and exclusion of Dr. Jurek's opinion that Harrell meets the statutory definition of having a mental disorder that makes it likely he will reoffend.

¶ 15. The determination of the proper construction of Wis. Stat. § 980.05(1m) in light of *Mark* and the application of constitutional standards to established facts present questions of law, which we review de novo. *See id.*, ¶ 12.

¶ 16. The State's position that the erroneous admission of Harrell's statement does not affect the admissibility of Dr. Jurek's opinion is based on its view that we may look at Dr. Jurek's report, which was an exhibit at trial, to determine what information he reviewed in arriving at his opinions. The report lists the items he reviewed. The list includes Harrell's statement as well as the sixteen year old's statement, a witness's statement, and the decision of the administrative law judge (ALJ) revoking Harrell's parole. Copies of the three statements and the decision are not attached to the report but the report refers to their contents. The report summarizes the three written statements and some findings from the ALJ's decision. In addition, the report relates Dr. Jurek's interview with Harrell in which Harrell states he made certain sexual comments to the sixteen year old. Beyond Dr. Jurek's testimony on

Harrell's statement, Dr. Jurek did not refer in his trial testimony to any other source for his knowledge of the incident about the sixteen year old. However, according to the State, by looking at Dr. Jurek's report, we can conclude that, although he considered Harrell's written statement in arriving at his opinion, he had the same information from these other sources and therefore his opinions would have been the same.[9]

¶ 17. Harrell's disagreement with the State's position is based on *Kastigar*. In *Kastigar*, the Court held that a federal statute that provided immunity from use and derivative use of compelled statements was commensurate with protection afforded by the Fifth Amendment privilege against self-incrimination and therefore sufficed to supplant that privilege. 406 U.S. at 459, 461. In clarifying the scope of the Fifth Amendment privilege, the Court stated:

> Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords th[e] protection [of the Fifth Amendment privilege]. It prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness.

*Id.* at 453. The Court stated that, once a defendant demonstrates that he or she has testified under a grant of immunity for matters related to the prosecution, the government has the burden of showing "that their

---

[9] The issue presented in this opinion overlaps to a large extent with the issue decided in section III of *State v. Mark*, 2008 WI App 44, 308 Wis. 2d 192, 747 N.W.2d 727. We scheduled oral argument in both cases on the same day and we are releasing both opinions on the same day. A portion of our discussion in this section closely tracks that in section III of that case.

evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." *Id.* at 460 (citations omitted). "This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.*

¶ 18. Although not cited by Harrell, we observe that the later case of *New Jersey v. Portash*, 440 U.S. 450 (1979), relied on *Kastigar* in again discussing the scope of the protection of the Fifth Amendment privilege. In rejecting the argument that a person's testimony before a grand jury under a grant of immunity could be used for impeachment purposes at a later trial, the *Portash* Court stated that "[t]estimony given in response to a grant of legislative immunity is the essence of coerced testimony[,]" the Fifth Amendment provides protection against compelled self-incrimination whether or not it is reliable, and "*any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process." 440 U.S. at 459 (citation omitted, emphasis in original).

¶ 19. Where the issue is whether a witness's testimony was directly or indirectly derived from a defendant's immunized statement, the inquiry is what the witness knew prior to the exposure to the immunized testimony and what information was gleaned from the exposure. *See United States v. North*, 920 F.2d 940, 944 (D.C. Cir. 1990). The State might meet this burden, for example, by demonstrating through testimony that a witness exposed to the immunized testimony had set down his or her "story" before exposure. *See id.*

¶ 20. Harrell argues that under *Mark* he is entitled to the same protection he would have in a criminal trial regarding a statement that is testimonial,

incriminating, and compelled. Under *Kastigar*, he asserts, this protection is not limited to exclusion of his written statement at trial but also precludes the State from presenting evidence at trial that is the result of use or derivative use of his statement. According to Harrell the State cannot show that Dr. Jurek's conclusion that Harrell made sexual overtures to the sixteen year old was derived from a source "wholly independent" from his compelled statement and, because this incident was critical to his opinion, his opinion must be excluded.

¶ 21. The State does not seem to be arguing that, if *Kastigar* applies, it can demonstrate that Dr. Jurek's opinion is not the result of use or derivative use of Harrell's compelled statement. Instead, we understand the State to be proposing a different standard—that if we can determine Dr. Jurek would have concluded without Harrell's written statement that the incident occurred, then the Fifth Amendment does not require exclusion of his opinion, only of Harrell's statement.

¶ 22. The case the State relies on—*State v. Watson*, 227 Wis. 2d 167, 595 N.W.2d 403 (1999)—addresses expert opinions in the context of Wis. Stat. § 907.03. That statute provides that an expert may rely on facts or data in forming an opinion that are not admissible in evidence if they are of a type reasonably relied on by experts in the field. *See* § 907.03. In *Watson*, the supreme court clarified that § 907.03 is not a hearsay exception and that hearsay data on which an expert relies are not admissible for the truth of the matter unless they are admissible under a recognizable exception to the hearsay rule. 227 Wis. 2d at 198–99. The court concluded, therefore, that if an expert's opinion is based solely on inadmissible hearsay, a circuit court may properly decide that the opinion does not establish

178

probable cause under Wis. Stat. ch. 980. *See id.* at 203. However, in the case before it, the court decided that some of the expert's opinions were not based on inadmissible hearsay and those opinions, together with the evidence of the respondent's pattern of prior offenses, established probable cause. *Id.* at 211–12.

¶ 23. Relying on *Watson*, the State argues that we are to consider all the information Dr. Jurek relied on besides Harrell's written statement—including the sixteen year old's statement and the witnesses' statements—and if we do that, his opinion is admissible notwithstanding his consideration of Harrell's written statement.

¶ 24. We do not agree that *Watson* supports the State's position. *Watson* does not support the proposition that an expert opinion is admissible even if it is based on a compelled statement that is inadmissible under the Fifth Amendment. The inadmissibility in *Watson* was based on the evidentiary rules excluding hearsay. *See id.* at 198–99. That case does not purport to, and could not, limit the scope of protection a person has under the Fifth Amendment.

¶ 25. We recognize that a difficulty for the parties —and this court—is that there appears to be no case law discussing use and derivative use of a compelled statement in a context similar to this case. This is not surprising. While in a Wis. Stat. ch. 980 proceeding the State typically presents psychiatric opinions on the respondent's mental health to prove its case, there are limited situations in criminal proceedings where that occurs. The use of expert opinions that may rely on a defendant's statements does occur when a defendant pleads not guilty by reason of a mental disease or defect. However, generally, when a defendant initiates a psychiatric evaluation and places his or her mental status

in controversy, he or she waives the right to remain silent. *State v. Slagoski*, 2001 WI App 112, ¶¶ 14–15, 244 Wis. 2d 49, 629 N.W.2d 50.

¶ 26. In addition, there is case law addressing when the State's introduction of a psychiatric opinion using a defendant's statement in the guilt or penalty phase of a criminal trial violates the defendant's Fifth Amendment privilege.[10] However, we have found none that come close to addressing the issue here, though two might be said to support Harrell's position that an expert opinion relying on a compelled statement, as well as the compelled statement, must be excluded under the Fifth Amendment. In *Cape v. Francis*, 741 F.2d 1287, 1294 n.7 (11th Cir. 1984), the court concluded that a psychiatrist's testimony offered by the State at the guilt phase of the trial was a violation of the defendant's Fifth Amendment rights, noting that it was "of no import" that the psychiatrist did not testify directly to any specific statements made by the defendant; it was "enough that the psychiatrist based his expert opinion on the contents of responses by a defendant who had not been given proper warnings and had not had an adequate opportunity to consult with counsel." The court then conducted a harmless error analysis and concluded the defendant would have been

---

[10] A leading case on this topic is *Estelle v. Smith*, 451 U.S. 454, 466–69 (1981), which holds that it is a violation of the Fifth Amendment for the State to introduce the testimony of a psychiatrist who evaluated the defendant for a competency hearing to prove future dangerousness at the penalty phase, where the defendant was not given *Miranda* warnings. (Use of the evaluation for the purposes of determining competency to stand trial did not implicate the Fifth Amendment because that did not assist the State in proving any element necessary to impose punishment. *See id.* at 465.)

180

convicted without the psychiatrist's testimony. *Id.* at 1294. Similarly, in *People v. Arcega,* 651 P.2d 338, 346–47 (Cal. 1982), the court concluded that the psychiatric testimony offered by the state at the guilt phase of the trial violated the Fifth Amendment because neither the statements of the defendant to a psychiatrist appointed for a competency evaluation nor the fruits of such statement may be used in a trial on guilt. The court then concluded that the admission of the psychiatrist's testimony was not harmless error. *Id.* at 349.

¶ 27. Both *Cape* and *Arcega* tend to support Harrell's position that Dr. Jurek's opinion, as well as Harrell's written statement, should have been excluded. However, the analysis in both cases is brief and neither case addresses the issue presented by the State's argument that Dr. Jurek had other sources that provided the same information.

¶ 28. In the absence of more specific guidance from the case law, we return to *Mark* and *Kastigar*. In *Mark*, the supreme court held that, by virtue of Wis. Stat. § 980.05(1m), at a ch. 980 trial the respondent has the same Fifth Amendment privilege against self-incrimination as does a defendant at a criminal trial, and the court looked to Fifth Amendment case law to define the scope of the privilege. *See* 292 Wis. 2d 1, ¶¶ 15–33. *Kastigar* articulates the scope of the privilege in terms of the protection at trial where a criminal defendant has given an immunized statement. *See* 406 U.S. at 452–53. The State's proposed analysis deviates from *Kastigar* in that it inquires not whether Dr. Jurek arrived at his opinion before being exposed to Harrell's immunized statement, but whether Dr. Jurek would have arrived at the same opinion from other sources had he not been exposed to the statement. However, the

State does not develop a legal theory in the context of Fifth Amendment case law to support its approach, nor does it explain how *Mark* might be read to support deviating from Fifth Amendment case law in this regard.

¶ 29. We conclude that under *Mark* we are to apply Fifth Amendment case law to define the scope of protection afforded Harrell and that in this context *Kastigar* applies to determine what testimony must be excluded. Applying *Kastigar*, we conclude that not only must Harrell's written statement be excluded, but also Dr. Jurek's opinions and any testimony presented by the State about the incident, unless the State can prove that this testimony is derived from a source wholly independent from Harrell's written statement.

¶ 30. It is evident from Dr. Jurek's report and from his trial testimony in which he identified Harrell's statement that he did review Harrell's written statement in forming certain of his opinions. In discussing at trial his opinion that Harrell had paraphilia, Dr. Jurek described the incident and he testified that he took it into account in forming that opinion. He also testified that he used the incident in scoring the actuarial instruments, and he considered it significant in forming his opinion that Harrell was likely to reoffend as a result of his mental disorders. Therefore, unless the State can demonstrate that Dr. Jurek derived his knowledge of the incident and his opinion that Harrell has paraphilia and is likely to reoffend from sources wholly independent from Harrell's written statement, those opinions and his testimony about the incident must be excluded, as well as Harrell's written statement.

¶ 31. As already noted, we do not understand the State to be arguing that it could show that Dr. Jurek

182

formed his understanding of the incident or his opinion based on a source or sources wholly independent from Harrell's written statement. It is therefore unnecessary to consider whether a remand for a "*Kastigar* hearing" would be appropriate at this time.[11] We conclude that, in addition to Harrell's written statement, Dr. Jurek's references to the incident and his opinions that Harrell had paraphilia and was likely to reoffend were erroneously admitted.

¶ 32. At oral argument, Harrell's counsel asserted that most of the other information about Harrell that Dr. Jurek testified to in explaining his opinion—besides the incident with the sixteen year old—was hearsay and therefore inadmissible under *Watson* to prove the truth of those matters. It is true that most of the information about Harrell on which Dr. Jurek relied in forming his opinion was admitted only through his testimony; the same is true of the other two experts. The only other

---

[11] "*Kastigar*" hearings—at which the State attempts to prove that the evidence it intends to present or has presented is derived from a source wholly independent from the defendant's immunized statement—may take place pretrial, during trial, or post-trial or some combination. *United States v. De Diego*, 511 F.2d 818, 823–24 (D.C. Cir. 1975). In addition, a *Kastigar* hearing may be ordered on remand in appropriate circumstances. *See, e.g., United States v. Brimberry*, 744 F.2d 580, 587 (7th Cir. 1984).

Although unnecessary to our opinion, we comment on two of the other sources of information on the incident with the sixteen year old that the State argues Dr. Jurek could have relied on. If the ALJ's opinion referred to Harrell's statement as a basis for its decision, that opinion would not be a source wholly independent from Harrell's statement. As for Dr. Jurek's interview with Harrell, if Dr. Jurek had read his written statement and used it to question Harrell about the incident, that would not be a wholly independent source.

witness was a records custodian at the institution where Harrell was incarcerated. This witness presented, for purposes of establishing Harrell's release date,[12] records of his 1991 convictions and sentences, conduct reports while incarcerated, and revocation. However, Harrell made no hearsay objection during the trial to Dr. Jurek's testimony (or to that of the other experts). Unlike the Fifth Amendment issue, which has previously been raised on this appeal without objection from the State, oral argument was the first time Harrell presented the argument that most of the information about Harrell presented to the jury was inadmissible hearsay.[13] We apply waiver and decline to address any hearsay objection to Dr. Jurek's testimony.

¶ 33. Harrell does not make a specific argument with respect to Dr. Monroe's testimony but we understand that his position, based on *Kastigar*, applies to Dr. Monroe's testimony as well as to Dr. Jurek's. Although Dr. Monroe did not consider the incident with the sixteen year old as a basis either for his diagnosis of pedophilia or his opinion that Harrell was not likely to reoffend, he did describe it. The State's position regarding these references is that they are proper testimony because there is no mention of Harrell's written statement. We disagree for the reasons we have already

---

[12] Under WIS. STAT. § 980.02(2)(ag), a petition under WIS. STAT. ch. 980 must allege that the respondent is within ninety days of release.

[13] We recognize that in his main brief Harrell argued that the statements of the sixteen year old and the witness *would have been* inadmissible hearsay *if* Dr. Jurek had testified that he relied on them. However, we consider that to be a different argument than that made at oral argument; the latter raised a hearsay objection to much of the information that Dr. Jurek *did* testify he relied on in forming his opinion.

discussed. Dr. Monroe's report, which was admitted into evidence, states that he reviewed all of Harrell's available records. The State does not argue that it can demonstrate that Dr. Monroe did not use Harrell's written statement in concluding that the incident occurred.

¶ 34. An underlying concern of the State appears to be that, if it cannot use, even in a derivative way, an immunized statement of a respondent at a trial under Wis. Stat. ch. 980, then the usual way of proving its case will not be possible. We appreciate this concern and can see that, in those proceedings still governed by Wis. Stat. § 980.05(1m),[14] the ramifications of applying *Kastigar* are significant. However, we are persuaded that *Mark* requires that a respondent in Harrell's situation is entitled to the full protection of the Fifth Amendment privilege against self-incrimination. If there ought to be some modification of this principle to take into account the ch. 980 context, that modification must, in our view, be made by the supreme court. And, as already mentioned, if there is a basis in existing Fifth Amendment law for excluding only Harrell's written statement, the State has not presented it.

¶ 35. In summary, we conclude that, in addition to Harrell's written statement, Dr. Jurek's testimony regarding the incident and his opinion that Harrell had paraphilia and was likely to reoffend were erroneously admitted. In addition, Dr. Monroe's testimony on the incident was erroneously admitted. We therefore turn to the issue of whether these errors were harmless.

---

[14] As noted earlier, Wis. Stat. § 980.05(1m) has been repealed.

II. Harmless Error Analysis

■

¶ 36. As the court in *Mark* stated, errors in admitting evidence that should have been excluded under the Fifth Amendment are subject to the harmless error analysis. 292 Wis. 2d 1, ¶ 34 (citing *Arizona v. Fulminante*, 499 U.S. 279, 295 (1991)). In keeping with this principle, courts that have applied *Kastigar* and concluded that evidence was erroneously admitted because the State did not meet its burden of showing no use or derivative use of an immunized statement have then engaged in a harmless error analysis. *See United States v. Shelton*, 669 F.2d 446, 464 (7th Cir. 1982); *United States v. Ponds*, 454 F.3d 313, 328 (D.C. Cir. 2006).

■

¶ 37. The supreme court has stated that an error is harmless if the State—the beneficiary of the error—proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *State v. Hale*, 2005 WI 7, ¶ 60, 277 Wis. 2d 593, 691 N.W.2d 637 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). The supreme court has also used the formulation that an error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *State v. Harvey*, 2002 WI 93, ¶ 49, 254 Wis. 2d 442, 647 N.W.2d 189 (citing *Neder v. United States*, 527 U.S. 1, 18 (1999)). These tests are equivalent in that an error does not contribute to the verdict if the court concludes that beyond a reasonable doubt a rational jury would have reached the same verdict without the error. *Id.*, ¶ 48 n.14. The factors that aid a court in determining whether an error is harmless include:

> [T]he frequency of the error, the importance of the erroneously admitted evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence, whether the erroneously admitted evidence duplicates untainted evidence, the nature of the defense, the nature of the State's case, and the overall strength of the State's case.

*Hale*, 277 Wis. 2d 593, ¶ 61. The determination of whether an error is harmless is a question of law, which we review de novo. *State v. Carnemolla*, 229 Wis. 2d 648, 653, 600 N.W.2d 236 (Ct. App. 1999).

¶ 38. Dr. Jurek's opinion that Harrell had the mental disorder of paraphilia and that this disorder, along with his personality disorder, made it likely he would reoffend was a significant part of the State's case. Although Dr. Monroe also testified to a mental disorder involving Harrell's sexual interests, the defense expert testified to the contrary; and without Dr. Jurek's opinion that Harrell was likely to reoffend, there was no expert opinion supporting this statutory requirement. In closing, the State argued that Dr. Jurek's opinion on reoffending was more persuasive than Dr. Monroe's because, unlike Dr. Monroe, he took the incident with the sixteen year old into account in scoring the actuarial instruments. The defense focused on the inconsistency among the expert opinions and the difficulty of predicting future conduct.

¶ 39. Harrell's written statement and the other references to the incident with the sixteen year old, particularly by Dr. Jurek who found it significant in a number of respects, were also a significant part of the State's case and mentioned numerous times. There was properly admitted evidence that Harrell was revoked in 2001 but, without knowing the reason, the jury would have no basis to connect the revocation to Harrell's

sexual conduct. In its initial closing argument, the State contended that, even without the actuarials, the incident with the sixteen year old showed that Harrell was likely to reoffend, and the State repeated this in its rebuttal.

¶ 40. The jury did hear properly admitted testimony about Harrell's past sexual misconduct and offenses. There were numerous references to the 1991 offenses for which he was convicted and the report of his sexual involvement with three young boys in 1989. There was also a report that he attempted to find work in a daycare center before he was arrested. As for his more recent conduct and attitude, there was evidence of his poor treatment history while incarcerated, which all three experts acknowledged; being sexually involved with other prisoners in violation of prison rules; and possessing prohibited materials, which included contact information for the North American Man/Boy Love Association (NAMBLA) and a committee that helps single parents adopt. In addition, Dr. Jurek testified that he found significant the cognitive distortions Harrell revealed in his interview while talking about the eleven-year-old girl and the six, eight, and nine-year-old boys.

¶ 41. It is true, as the State argues, that the fact-finder at a WIS. STAT. ch. 980 trial may accept or reject an expert's opinion and accept or reject certain portions while disregarding others. *See State v. Kienitz*, 227 Wis. 2d 423, 438–41, 597 N.W.2d 712 (1999). We add that we are aware of no case holding that a finding of future dangerousness must be supported by expert testimony. *See id.* at 439–40. Certainly Harrell's poor treatment history, his possession of the NAMBLA materials, and the cognitive distortions Dr. Jurek reported are evidence that Harrell had not made significant

progress in modifying the attitudes and interests that were involved in his earlier sexual misconduct and offenses.

¶ 42. However, the focus of the trial was on which expert or experts to believe, and no expert testified that the evidence in the preceding sentence was sufficient to show a likelihood of reoffending. Dr. Jurek's opinion on the likelihood of reoffending very definitely relied on the incident with the sixteen year old and Dr. Monroe's opinion was that, even given that the incident occurred, it was not likely that Harrell would reoffend. While the jury did not have to accept the opinion of Dr. Monroe on Harrell's likelihood of reoffending, we are not confident that a rational jury would have disregarded that opinion if that were the only expert opinion offered on that point, particularly given that the defense expert testified that Harrell did not have a mental disorder that predisposed him to acts of sexual violence.

¶ 43. In summary, Dr. Jurek's opinion was an important part of the State's case and the evidence of the incident with the sixteen year old was significant, even apart from Dr. Jurek's use of it in arriving at his opinion, to show the jury that Harrell was still engaging in sexual misconduct. Without this erroneously admitted evidence, the State's case was considerably weaker. The jury heard expert testimony that supported a finding that Harrell did not have a mental disorder predisposing him to acts of sexual violence, and, even if he did, it was not likely he would reoffend. We therefore conclude the State has not met its burden of showing, beyond a reasonable doubt, that the erroneously admitted testimony did not contribute to the jury's verdict.

## CONCLUSION

¶ 44. We conclude that, under Fifth Amendment case law, in addition to Harrell's written statement, the expert's opinion that used this statement must be excluded, as well as other testimony referring to the incident described in the written statement. We also conclude that these errors were not harmless beyond a reasonable doubt. We therefore reverse the circuit court's order, reverse the judgment that Harrell is a sexually violent person, and remand for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded with directions.